No. 21-3903

United States Court of Appeals
for the Eighth Circuit

D. BART ROCKETT,
as next friend of his minor children K.R. and B.R.,
Plaintiff-Appellee,

v.

THE HONORABLE ERIC EIGHMY,
Defendant-Appellant.

Interlocutory Appeal from the United States District Court
for the Western District of Missouri
The Honorable Douglas Harpool

# BRIEF OF NATIONAL POLICE ACCOUNTABILITY PROJECT AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE


Keisha James
Eliana Machefsky
Lauren Bonds
National Police Accountability Project
2022 St. Bernard Avenue, Suite 310
New Orleans, LA 70116
legal.npap@nlg.org

Jordan S. Kushner
Attorney
Center Village Building, Suite 2446
431 South 7th Street
Minneapolis, MN  55415
jskushner@gmail.com

*Counsel for Amicus Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................2

INTEREST OF AMICUS CURIAE ..............................................................5

INTRODUCTION ......................................................................................6

SUMMARY OF THE ARGUMENT ............................................................7

ARGUMENT ..............................................................................................8

I. The Doctrine of Judicial Immunity is Predicated on the Availability of Meaningful Judicial Review. ..............................................................8

II. The Extra-Jurisdictional Exception to Absolute Immunity is Necessary to Vindicate Egregious Constitutional Harms. ........................................13

A. The doctrine of absolute immunity is inconsistent with the general principle that civil rights violations should be remedied. ..........................13

B. The harms caused by judicial officers acting in the absence of jurisdiction can only be remedied by Section 1983 suits. ..............................................15

CONCLUSION ..........................................................................................18

## TABLE OF AUTHORITIES

### CASES


*Anilao v. Spota*, 774 F. Supp. 2d 457 (E.D.N.Y. 2011)..........................................16

*Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871) ....................................................8

*Briscoe v. Lahue*, 460 U.S. 325 (1983)....................................................................14

*Burns v. Reed*, 500 U.S. 478 (1991) ........................................................................14

*Butz v. Economou*, 438 U.S. 478 (1978)........................................................ 8, 9, 10

*Forrester v. White*, 484 U.S. 219, 227 (1988) .....................................................8, 11

*Forrester v. White*, 792 F.2d 647 (7th Cir. 1986)............................................. 14, 15

*Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974) ................................................17

*Hoppe v. Klapperich*, 224 Minn. 224 (1947).........................................................17

*Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753 (8th Cir. 2019)..................12

*Maestri v. Jutkofsky*, 860 F.2d 50 (2d. Cir. 1988). ...................................................16

*Marbury v. Madison*, 5 U.S. 137 (1803)..................................................................13

*Martin v. Hendren*, 127 F.3d 720 (8th Cir. 1997) ...................................................14

*Mireles v. Waco*, 502 U.S. 9 (1991)................................................................. 12, 14

*Pierson v. Ray*, 386 U.S. 547 (1967) ......................................................... 8, 11, 15

*Schottel v. Young*, 687 F.3d 370 (8th Cir. 2012) .....................................................12

*Stump v. Sparkman*, 435 U.S. 349 (1978)...........................................................8, 12

*United States v. Hoffman*, 71 U.S. 158 (1867) .......................................................16

*Utley v. City of Independence*, 240 Or. 384 (1965) ....17

*Vickrey v. Dunivan*, 59 N.M. 90 (1955)....17

*Wade v. Bethesda Hospital*, 337 F. Supp. 671 (S.D. Ohio 1971)....17

**OTHER AUTHORITIES**

2 Cooley, Torts (4 ed.) § 315 ....18

3 WILLIAM BLACKSTONE, COMMENTARIES....13

Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 Yale L.J. 1425 (1987) ....13

Don B. Kates, Jr., *Immunity of State Judges Under the Federal Civil Rights Acts:* Pierson v. Ray *Reconsidered*, 65 Nw. U. L. Rev. 615 (1970)....13

Jeffrey M. Shaman, *Judicial Immunity from Civil and Criminal Liability*, 27 SAN DIEGO L. REV. 1 (1990).... 11, 12

Keith A. Findley, *Innocence Protection in the Appellate Process*, 93 MARQ. L. REV. 591 (2009) .... 10, 12

Margaret Z. Johns, *A Black Robe Is Not a Big Tent: The Improper Expansion of Absolute Judicial Immunity to Non-Judges in Civil-Rights Cases*, 59 SMU L. REV. 265 (2016) ....9

Ronald A. Cass, *Damage Suits Against Public Officers*, 129 U. Pa. L. Rev. 1110 (1981) ....11

Timothy M. Stengel, *Absolute Judicial Immunity Makes Absolutely No Sense: An Argument for an Exception to Judicial Immunity*, 84 TEMPLE L. REV. 107 (2012) ............................................................................................................ 10, 12

Tracey E. George and Albert H. Yoon, *The Gavel Gap: Who Sits In Judgment On State Courts?*, American Constitution Society 1 (2016), https://eduhelphub.com/blog/wp-content/uploads/2021/11/gavel-gap-report.pdf ..............................................................................................................15

## INTEREST OF AMICUS CURIAE[1]

The National Police Accountability Project (NPAP) was founded in 1999 by members of the National Lawyers Guild to address misconduct by law enforcement officers through coordinating and assisting civil rights lawyers. NPAP has approximately 550 attorney members practicing in every region of the United States, including a number of members who represent clients who experience government abuses of power in local courts.

Every year, NPAP members litigate the thousands of egregious cases of law enforcement abuse that do not make news headlines as well as the high-profile cases that capture national attention. NPAP provides training and support for these attorneys and resources for non-profit organizations and community groups working on police and correction officer accountability issues. NPAP also advocates for legislation to increase police accountability and appears regularly as amicus curiae in cases, such as this one, presenting issues of particular importance for its members and their clients.

---

[1] Pursuant to Fed. R. App. P. 29, amicus curiae states that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparing or submitting this brief, and no person other than amicus curiae, their members, or their counsel contributed money intended to fund preparing or submitting this brief. All parties have consented to the National Police Accountability Project's participation as amicus curiae in this case and the filing of this brief.

NPAP is dedicated to ensuring that persons whose rights have been violated by law enforcement officers have sufficient legal remedies. This is necessary not only to provide recompense to those who have been wronged but to ensure there are legal mechanisms to enforce our constitutionally protected liberties. Although the doctrine of judicial immunity may be necessary to insulate judges from personal liability while they carry out sensitive responsibilities within the scope of their judicial authority, the justification for absolute immunity disappears when judges clearly act outside of the scope of their judicial authority. In cases where a judge uses their judicial authority to infringe on liberties where they lack any jurisdiction, the need for a legal remedy is as great or greater than it is when any person abuses their authority under the color of law. The ability to obtain make-whole remedies is essential to an effective civil rights enforcement regime and comports with the broad purpose of 42 U.S.C. § 1983 (Section 1983).

## INTRODUCTION

Plaintiff-Appellee brought this Section 1983 action as next of friend of his two minor children seeking damages for the unreasonable seizure of the children under the Fourth Amendment, for retaliation against the children for exercising their First Amendment rights, and for physical and bodily abuse of the children in violation of the Fourteenth Amendment's Due Process Clause. Defendant-

Appellant moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting judicial immunity. The district court denied Defendant-Appellant's motion. This is an interlocutory appeal by Defendant-Appellant of the district court's denial of judicial immunity. Defendant-Appellant lacks judicial immunity because his first seizure was not a judicial act and his Pick Up Order was made in the clear absence of all jurisdiction. Because the denial of judicial immunity is appropriate, this Court should reject Defendant-Appellant's arguments to the contrary.

## SUMMARY OF THE ARGUMENT

The doctrine of judicial immunity is predicated, in part, on safeguards built into the judicial system, such as judicial review, which prevent and correct most constitutional violations. However, in cases where a judge's unconstitutional conduct cannot be corrected by judicial review, victims need to be able to access a mechanism to hold the judge accountable and seek compensation for the harm suffered. Because decisions made in the clear absence of all jurisdiction cannot be meaningfully reviewed by a higher court, victims must be able to bring Section 1983 suits against judges who violate constitutional rights while acting without jurisdiction. Although the doctrine of judicial immunity protects judges from personal liability in most instances, denying immunity to judges who have made decisions outside of their jurisdiction is an important and necessary exception.

Without this exception, egregious unconstitutional conduct would remain unredressed despite the severe harms suffered by victims.

## ARGUMENT

### I. The Doctrine of Judicial Immunity is Predicated on the Availability of Meaningful Judicial Review.

The doctrine of judicial immunity is well-settled law. *Pierson v. Ray*, 386 U.S. 547, 560 (1967). Under the doctrine, judges are immune from liability for judicial acts committed within their judicial jurisdiction, even when they have acted maliciously and corruptly. *Id.* at 554. Judges have been granted this immunity because of the "special nature of their responsibilities" and the need for judges to perform their responsibilities "without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978). Judicial immunity is "thought to be in the best interests of the proper administration of justice" because it allows a judge "to be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 364 (1978) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871) (internal citations omitted)). The protection of immunity is intended to assure judges that they will not be subject to suit from litigants who are dissatisfied with their rulings. *Forrester v. White*, 484 U.S. 219, 227 (1988); *see also Butz*, 438 U.S. at 512; *Pierson*, 386 U.S. at 554. Courts have found that the need for judges to make independent and

impartial decisions outweighs the risk that valid claims of unconstitutional conduct by judges will be barred by judicial immunity.

The doctrine of judicial immunity, however, is not premised on the belief that judges are incapable of engaging in misconduct or that their actions should be insulated from review. There are a number of safeguards within the judicial system that promote judicial accountability and reduce the risk that judicial immunity will leave unconstitutional conduct unredressed. *Butz*, 438 U.S. at 512. For instance, "[t]he insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal" are all checks on judicial action that have been built into the system. *Id*. In fact, when the doctrine of judicial immunity was expanded to apply to federal administrative judges, one of the justifications was that many of the same safeguards in judicial proceedings were present in administrative proceedings. *See* Margaret Z. Johns, *A Black Robe Is Not a Big Tent: The Improper Expansion of Absolute Judicial Immunity to Non-Judges in Civil-Rights Cases*, 59 SMU L. REV. 265, 266 (2016) (listing adversary proceedings, the insulation of judges from political pressure, the right to present evidence, transcripts of proceedings, statements of findings and conclusions on all issues of fact, law, or discretion, and the right to agency or judicial review as safeguards). The judicial immunity doctrine presumes these safeguards are

functioning together to prevent or correct the unconstitutional actions of judges. *Butz*, 438 U.S. at 512 ("Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error.").

Appellate review, in particular, serves as a strong deterrent against judicial misconduct and provides recourse when constitutional rights have been violated, making it the most important safeguard for promoting judicial accountability. Judicial review by higher courts serves several essential functions, including "guard[ing] against erroneous outcomes," "evaluat[ing] cases for procedural fairness and regularity," and resolving matters before the court once and for all. Keith A. Findley, *Innocence Protection in the Appellate Process*, 93 MARQ. L. REV. 591, 607 (2009). The very prospect of judicial review may deter unconstitutional conduct where a judge knows a decision will be reviewed by a higher court. *See* Timothy M. Stengel, *Absolute Judicial Immunity Makes Absolutely No Sense: An Argument for an Exception to Judicial Immunity*, 84 TEMPLE L. REV. 1071, 1095-96 (2012) ("Although not traditionally thought of as compensatory, the appellate process arguably makes victims of judicial corruption whole by preventing them from suffering measurable harm in the first place.").

The rationale behind the doctrine of judicial immunity relies heavily on the fact that litigants can avail themselves of meaningful judicial review. *See, e.g.*, *Forrester*, 484 U.S. at 227 ("[M]ost judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability."); *Pierson*, 386 U.S. at 554 ("It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. *His errors may be corrected on appeal*, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.") (emphasis added); Jeffrey M. Shaman, *Judicial Immunity from Civil and Criminal Liability*, 27 SAN DIEGO L. REV. 1, 3 (1990) ("As a historical matter, the doctrine of judicial immunity arose in response to the creation of the right of appeal."); Ronald A. Cass, *Damage Suits Against Public Officers*, 129 U. PA. L. REV. 1110, 1148 (1981) ("[A]vailability of these [appellate review] mechanisms reduces the likely damage from erroneous initial decisions and offers a lower-cost alternative to liability for correcting them.").

Because appellate review is such a critical antecedent to judicial immunity, courts have long-recognized that a judge whose actions are not subject to review—because he acted in the complete absence of all jurisdiction—cannot claim absolute

immunity. *Mireles v. Waco*, 502 U.S. 9, 12 (1991). The extra-jurisdictional exception is considered and applied in limited circumstances where there is no opportunity for judicial review because a judge has taken action in the absence of jurisdiction. *See, e.g., Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 762 (8th Cir. 2019); *Schottel v. Young*, 687 F.3d 370, 374 (8th Cir. 2012); Jeffrey M. Shaman, *Judicial Immunity from Civil and Criminal Liability*, 27 SAN DIEGO L. REV. 1, 28 (1990).

Although a lower court's error will not always be corrected on appeal,[2] a matter adjudicated with proper subject matter and personal jurisdiction at least provides the higher court with an opportunity to review an error. Actions taken in the absence of jurisdiction, by contrast, are not subject to judicial review by a higher court. *See Stump*, 435 U.S. at 370 (Powell, J., dissenting) ("Underlying the *Bradley* immunity . . . is the notion that private rights can be sacrificed in some degree to the achievement of the greater public good deriving from a completely independent judiciary, because there exist alternative forums and methods for

---

[2] It should be noted that even in cases where a lower court with jurisdiction errs and an issue is properly preserved on appeal, judicial review does not guarantee that an error will be corrected. *See, e.g.,* Stengel at 1096 (appeals do not guarantee "accurate[] or even consistent results"); *id.* at 1102 ("the standard used by appellate courts to review trial level findings is highly deferential and generally only reviews the trial record for clear errors or abuses of discretion"); Findley at 635 (appellate courts cannot always guard against erroneous judgements because of "[s]ubstantive doctrine, procedural barriers, cognitive biases, institutional pressures, and a demand for extreme deference to trial-level factual determinations").

vindicating those rights. But where a judicial officer acts in a manner that precludes all resort to appellate or other judicial remedies that otherwise would be available, the underlying assumption of the *Bradley* doctrine is inoperative.”). Without the opportunity for meaningful judicial review, unconstitutional conduct can only be corrected by civil suit as victims harmed by a judge’s unconstitutional conduct often have no other meaningful recourse.[3]

## II. The Extra-Jurisdictional Exception to Absolute Immunity is Necessary to Vindicate Egregious Constitutional Harms.

### A. The doctrine of absolute immunity is inconsistent with the general principle that civil rights violations should be remedied.

The principle that for every right there exists a remedy is the bedrock of our system of civil liberties. *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (“‘[I]t is a general and indisputable rule, that where there is a legal right, there is a legal remedy by suit or action at law, whenever that right is invaded.’”) (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES *23). *See also* Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 YALE L.J. 1425, 1427 (1987) (“Whenever [governments and their officers] do act unconstitutionally, they must in some way

[3] It is worth noting that even in cases where appellate review corrects a judge’s misconduct, the relief provided does not compensate victims for the harm they have suffered. *See* Don B. Kates, Jr., *Immunity of State Judges Under the Federal Civil Rights Acts:* Pierson v. Ray *Reconsidered*, 65 NW. U. L. REV. 615, 638 (1970) (“appellate review (in itself a process often involving tremendous financial and emotional costs for the appellant) provides no compensation for the financial, emotional, and other harms suffered as a result of the trial court’s impropriety”).

undo the violation by ensuring that victims are made whole."). But when those who violate constitutional rights are absolutely immune from suit, those violations are left unredressed.

Both this Court and the Supreme Court of the United States have recognized that absolute immunity can result in injustice when a plaintiff with an otherwise valid constitutional claim is left without any legal remedy. *Briscoe v. Lahue*, 460 U.S. 325, 345 (1983) (noting that absolute immunity for prosecutors and witnesses may bar relief for "unjustly convicted" defendants); *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (acknowledging that absolute immunity can result in "unfairness and injustice to a litigant"); *Martin v. Hendren*, 127 F.3d 720, 723 (8th Cir. 1997) (Lay, J., dissenting) (quoting *Mireles*, 502 U.S. at 10). *See also Forrester v. White*, 792 F.2d 647, 660 (7th Cir. 1986) (Posner, J., dissenting) (reasoning that the costs of judicial liability "have to be balanced against those of letting wrongdoers get off scott-free").

Because absolute immunity is in tension with the fundamental rule that rights must have corresponding remedies, the Supreme Court has been "quite sparing in [its] recognition of absolute immunity and ha[s] refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991) (internal quotation marks and citations omitted). There is no justification for granting absolute immunity in the present case. When a judge violates an

individual's constitutional rights while acting in the complete absence of jurisdiction, as Defendant-Appellant did here, none of the doctrinal rationales for absolute immunity apply. There is no need to insulate Defendant-Appellant's decision-making from the "intense feelings" of "unsatisfied litigants" when the matter was not properly before him and there was no decision for him to properly reach. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Forrester*, 792 at 660 (Posner, J., dissenting) ("Absolute immunity is strong medicine, justified only when the danger of" officials "being seriously deflected from the effective performance of their duties" is "very great.").

**B. The harms caused by judicial officers acting in the absence of jurisdiction can only be remedied by Section 1983 suits.**

Local judges wield extraordinary power over the lives of the people who appear before them. *See* Tracey E. George and Albert H. Yoon, *The Gavel Gap: Who Sits In Judgment On State Courts?*, American Constitution Society 1, 3 (2016), https://eduhelphub.com/blog/wp-content/uploads/2021/11/gavel-gap-report.pdf (discussing the tremendous power and discretion of state court judges, who "handle more than 90% of the judicial business in America"). Even when judges are acting in the complete absence of jurisdiction, the prestige of their position often enables them to engage in severely injurious conduct that would be unfeasible but for their esteemed status. Section 1983 damages provide the only

form of redress for victims of judicial misconduct when a judge acts in the absence of jurisdiction.[4]

The cases in which courts have applied the extra-jurisdictional exception to deny absolute judicial immunity demonstrate the magnitude of the harms plaintiffs can face at the hands of a judge and the importance of Section 1983 relief. For example, in *Maestri v. Jutkofsky*, the Second Circuit Court of Appeals denied absolute immunity to a judge who issued an arrest warrant for "alleged misconduct [that] occurred in a town over which [the judge] necessarily and obviously knew he had no jurisdiction." 860 F.2d 50, 53 (2d. Cir. 1988). The Ninth Circuit Court of Appeals denied absolute immunity to a judge who assaulted someone in his courtroom because "when a judge exercises physical force in a courtroom, his

[4] Even in cases where a procedural safeguard other than appellate review addresses a judge's misconduct, such safeguards only emerge *after* the harm has already been suffered by the plaintiff and cannot compensate a plaintiff for their financial, emotional, or other harms. In this case, the higher court issued a writ of prohibition against Judge Eighmy for acting outside of his jurisdiction the day after the children were seized under the Pick Up Order. Although a writ of prohibition preserves the integrity of jurisdictional limits and prevents future harms, it does not and cannot compensate plaintiffs for the harms they have already suffered. *See United States v. Hoffman*, 71 U.S. 158, 161-62 (1867) ("If the thing be already done, it is manifest the writ of prohibition cannot undo it, for that would require an affirmative act; and the only effect of a writ of prohibition is to suspend all action, and to prevent any further proceeding in the prohibited direction."). Moreover, the abuse of authority that is extra-jurisdictional action is a harm in and of itself that the writ of prohibition does not redress. *See Anilao v. Spota*, 774 F. Supp. 2d 457 (E.D.N.Y. 2011) (the court's writ of prohibition against prosecutors did not foreclose plaintiff's Section 1983 suit against them).

decision is not amenable to appellate correction." *Gregory v. Thompson*, 500 F.2d 59, 64 (9th Cir. 1974). The District Court for the Southern District of Ohio denied absolute immunity to a judge who acted without jurisdiction in ordering the plaintiff to submit to surgical sterilization. *Wade v. Bethesda Hospital*, 337 F. Supp. 671, 674 (S.D. Ohio 1971). In *Vickrey v. Dunivan*, the New Mexico Supreme Court held that a justice of the peace acted in the absence of jurisdiction when he convicted the plaintiff of "driving on the wrong side of the road" when he "well knew that the village had no such ordinance" and the plaintiff's alleged actions occurred outside the confines of the village. 59 N.M. 90, 94 (1955). And in *Hoppe v. Klapperich*, the Supreme Court of Minnesota held that a judge acted in the absence of jurisdiction when maliciously issuing an arrest warrant unsupported by a written complaint. 224 Minn. 224, 236 (1947). *See also Utley v. City of Independence*, 240 Or. 384, 390 (1965) (denying judicial immunity under the same circumstances, holding that "when a judicial officer issues a warrant without a sworn complaint having been made, there is no judicial business properly before him, and he acts as a private citizen.").

In these cases, just as in the present case, judges committed egregious constitutional violations in the complete absence of jurisdiction. A principle as well-established as absolute judicial immunity is that "[a] judge is not such at all times and for all purposes; when he acts he must be clothed with jurisdiction; and

acting without this, he is but the individual falsely assuming an authority he does not possess." 2 Cooley, Torts (4 ed.) § 315. When, as here, a judge falsely assumes authority and violates constitutional rights, his victims must be able to seek redress under Section 1983.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff-Appellee's brief, this Court should uphold the district court's order denying judicial immunity to Defendant-Appellant.

Respectfully submitted,

s/Jordan S. Kushner
Jordan S. Kushner
Attorney
Center Village Building, Suite 2446
431 South 7th Street
Minneapolis, MN 55415
jskushner@gmail.com

Lauren Bonds
Keisha James
Eliana Machefsky
National Police Accountability Project
2022 St. Bernard Avenue, Suite 310
New Orleans, LA 70116
legal.npap@nlg.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable type-volume limit and typeface requirements. Excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains 3277 words, and has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: April 18, 2022

s/Jordan S. Kushner
Jordan S. Kushner

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on April 18, 2022, with e-service on all appellate counsel of record.

Dated: April 18, 2022.

s/Jordan S. Kushner
Jordan S. Kushner