No. 21-3903

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## 𝔉𝔬𝔯 𝔱𝔥𝔢 𝔈𝔦𝔤𝔥𝔱𝔥 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

D. BART ROCKETT, as next friend of his minor children, K.R. and B.R.,

*Plaintiff-Appellee,*

v.

THE HONORABLE ERIC EIGHMY,

*Defendant-Appellant.*

Appeal from the United States District Court for the Western
District of Missouri, The Honorable M. Douglas Harpool

## BRIEF OF APPELLANT THE HONORABLE ERIC EIGHMY

Office of the Missouri Attorney
General
Supreme Court Building
P.O. Box 899
Jefferson City, Missouri 65102
Phone: 314-340-4869
Fax: 573-751-0774
Michael.Talent@ago.mo.gov

**ERIC S. SCHMITT**
*Attorney General*

Michael E. Talent, CA 322220
*Deputy Solicitor General*

*Attorney for Defendant-Appellant*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

During a contentious custody dispute, Judge Eighmy—the judge presiding over the matter—had to twice deal with two children, K.R. and B.R., who did not comply with his orders.  First, on the day he approved their custody arrangement, K.R. and B.R. told Judge Eighmy that they would not comply with it and go with their mother.  In response, Judge Eighmy walked them to the courthouse jail and ordered them detained until they complied.  Second, after the father and children failed to appear for a hearing regarding noncompliance with the custody arrangement, Judge Eighmy issued an order asking law enforcement to pick up the children.  Local Louisiana deputies did, which again resulted in K.R.'s and B.R.'s detention when they refused to go with their mother. Those are judicial acts and so Judge Eighmy, as a judge with subject-matter jurisdiction over the custody dispute, is immune from liability for them.  The district court's contrary conclusion is erroneous.

Due to the complexity of the issues of the case and the importance of the issue of judicial immunity, Judge Eighmy requests 15 minutes of oral argument per side.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT i

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES ...........................................................2

STATEMENT OF THE CASE ..............................................................4

I.      The background ......................................................................4

II.     Judge Eighmy orders officers to take K.R. and B.R. into custody after they refuse to comply with the custody agreement. ........................................7

III.    The Pick Up Order ................................................................9

IV.     Procedural background and district court decision ......................11

SUMMARY OF ARGUMENT ...........................................................12

STANDARD OF REVIEW ...............................................................14

ARGUMENT ................................................................................15

I.      Judge Eighmy's actions were judicial acts. .................................17

        A.      Judge Eighmy's actions on October 8, 2019, were judicial acts. .......17

        B.      Issuing the Pick Up Order was a judicial act. ....................26

II.     Judge Eighmy did not act in the clear absence of jurisdiction. .....................28

CONCLUSION .............................................................................34

CERTIFICATE OF COMPLIANCE ...................................................36

CERTIFICATE OF SERVICE ..........................................................37

Appellate Case: 21-3903     Page: 3     Date Filed: 03/10/2022 Entry ID: 5135021

# TABLE OF AUTHORITIES

## Cases

*Ashelman v. Pope,*
    793 F.2d 1072 (9th Cir. 1986) ................................................................. 29

*Benton v. Alcazar Hotel Co.,*
    194 S.W.2d 20 (Mo. 1946) ..................................................................... 22

*Billingsley v. Kyser,*
    691 F.2d 388 (8th Cir. 1982) ................................................................. 28

*Birch v. Mazander,*
    678 F.2d 754 (8th Cir. 1982) ................................................................. 28

*Blanchette v. Blanchette,*
    476 S.W.3d 273 (Mo. banc 2015) ........................................................ 33

*Bradley v. Fisher,*
    80 U.S. (13 Wall.) 335 (1871) ...................................... 2, 15, 16, 30, 31

*Brictson v. Woodrough,*
    164 F.2d 107 (8th Cir. 1947) ................................................................. 29

*Brown v. Griesenauer,*
    970 F.2d 431 (8th Cir. 1992) ................................................................. 15

*Butz v. Economou,*
    438 U.S. 478 (1978) ............................................................................... 16

*Callahan v. Rendlen,*
    806 F.2d 795 (8th Cir. 1986) ................................................................... 1

*Coleman v. Watt,*
    40 F.3d 255 (8th Cir. 1994) ................................................................... 28

*Duba v. McIntyre,*
    501 F.2d 590 (8th Cir. 1974) ................................................................. 29

*Dykes v. Hosemann,*
    776 F.2d 942 (11th Cir. 1985) ........................................................ 15, 29

Appellate Case: 21-3903    Page: 4    Date Filed: 03/10/2022 Entry ID: 5135021

*Forrester v. White,*
    484 U.S. 219 (1988) ................................................................ 15, 23

*Green v. Maraio,*
    722 F.2d 1013 (2d Cir. 1983) ............................................................ 29

*Greenman v. Jessen,*
    787 F.3d 882 (8th Cir. 2015) ......................................................... 4, 14

*Hager v. Ark. Dep't of Health,*
    735 F.3d 1009 (8th Cir. 2013) ........................................................... 14

*Hamilton v. City of Hayti,*
    948 F.3d 921 (8th Cir. 2020) .................................................... *passim*

*Harper v. Merckle,*
    638 F.2d 848 (5th Cir. Unit B Mar. 1981) .......................................26

*Harris v. Deveaux,*
    780 F.2d 911 (11th Cir. 1986) ...................................................25, 26

*Heartland Academy Community Church v. Waddle*
    (*Heartland I*), 335 F.3d 684 (8th Cir. 2003) .......................................20

*Holloway v. Walker,*
    765 F.2d 517 (5th Cir. 1985) .............................................................15

*In re Expungement of Arrest Records Related to Brown,*
    226 S.W.3d 147 (Mo. banc 2007) .......................................................34

*In re M.D.S.,*
    837 S.W.2d 338 (Mo. Ct. App. 1992)...........................................21, 24

*J.C.W. ex rel. Webb v. Wyciskalla,*
    275 S.W.3d 249 (Mo. banc 2009) .......................................................31

*Jakes, Ltd. v. City of Coates,*
    356 F.3d 896 (8th Cir. 2004)..............................................................19

*John v. Barron,*
    897 F.2d 1387 (7th Cir. 1990)............................................................29

Appellate Case: 21-3903    Page: 5    Date Filed: 03/10/2022    Entry ID: 5135021

*Justice Network Inc. v. Craighead County,*
    931 F.3d 753 (8th Cir. 2019)............................................ 16, 17, 29, 32

*Ketteman v. Ketteman,*
    347 S.W.3d 647 (Mo. Ct. App. 2011)...................................................31

*Liles v. Reagan,*
    804 F.2d 493 (8th Cir. 1986)....................................................... 19, 22

*Lopez v. Vanderwater,*
    620 F.2d 1229 (7th Cir. 1980)............................................................26

*Malina v. Gonzales,*
    994 F.2d 1121 (5th Cir. 1993)............................................................22

*Martin v. Hendren,*
    127 F.3d 720 (8th Cir. 1997)..............................................................20

*McAlester v. Brown,*
    469 F.2d 1280 (5th Cir. 1972)............................................................26

*Miller v. Hubbert,*
    804 S.W.2d 819 (Mo. Ct. App. 1991)..................................................20

*Miller v. Redwood Toxicology Lab., Inc.,*
    688 F.3d 928 (8th Cir. 2012)......................................................... 4, 14

*Mireles v. Waco,*
    502 U.S. 9 (1991)....................................................... 15, 16, 17, 23, 32

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985)........................................................................... 1

*Moses v. Parwatikar,*
    813 F.2d 891 (8th Cir. 1987)..............................................................16

*Newman v. Indiana,*
    129 F.3d 937 (7th Cir. 1997)...................................................... 2, 23, 24

*Norfleet v. Renner,*
    924 F.3d 317 (6th Cir. 2019)..............................................................16

Appellate Case: 21-3903    Page: 6    Date Filed: 03/10/2022    Entry ID: 5135021

*Patten v. Glaser,*
771 F.2d 1178 (8th Cir. 1985)...............................................32

*Pearman v. Dep't of Soc. Servs.,*
20 S.W.3d 540 (Mo. Ct. App. 2000).....................................31

*Pierson v. Ray,*
386 U.S. 547 (1967)..............................................................15

*Randall v. Brigham,*
74 U.S. (7 Wall.) 523 (1868).................................................15

*Rankin v. Howard,*
633 F.2d 844 (9th Cir. 1980)................................................29

*Rogers v. Gaston,*
2020 WL 1694796 (W.D. Mo. Apr. 7, 2020)........................21

*Schottel v. Young,*
687 F.3d 370 (8th Cir. 2012)......................................*passim*

*Schutter v. Seibold,*
632 S.W.3d 820 (Mo. Ct. App. 2021)................... 3, 22, 27, 33

*Smith v. Pace,*
313 S.W.3d 124 (Mo. banc 2010) .........................................19

*State ex rel. Cullen v. Harrell,*
567 S.W.3d 633 (Mo. banc 2019) .........................................22

*State ex rel. M.D.K. v. Dolan,*
968 S.W.2d 740 (Mo. Ct. App. 1998)....................................31

*Stump v. Sparkman,*
435 U.S. 349 (1978)....................................................*passim*

*United States v. Neil,*
407 F. App'x 993 (8th Cir. 2011).........................................31

*United States v. Trudell,*
563 F.2d 889 (8th Cir. 1977)................................................19

vi

*White v. Bloom,*
   621 F.2d 276 (8th Cir. 1980) ........................................................ 2, 31

*Woodworth v. Hulshof,*
   891 F.3d 1083 (8th Cir. 2018) ..................................................... *passim*

*Zarcone v. Perry,*
   572 F.2d 52 (2d Cir. 1978) ............................................................... 22

## Constitutions

Mo. Const. art. V, § 14(a) ..................................................................... 31

Mo. Const. art V, § 17 ........................................................................... 31

## Statutes

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C. § 1343 ...................................................................................... 1

28 U.S.C. § 2201 ...................................................................................... 1

Mo. Ann. Stat. § 211.131 .................................................................. 2, 21

Mo. Ann. Stat. § 211.401 .................................................................. 2, 21

Mo. Ann. Stat. § 452.400 ...................................................................... 19

Mo. Ann. Stat. § 452.410 ...................................................................... 20

Mo. Ann. Stat. § 452.740 ...................................................................... 33

Mo. Ann. Stat. § 452.745 ...................................................................... 33

Mo. Ann. Stat. § 452.785 ............................................................. 2, 21, 26

Mo. Ann. Stat. § 452.885 ...................................................................... 26

Mo. Ann. Stat. § 476.110 ...................................................................... 19

Mo. Ann. Stat. § 476.130 ...................................................................... 24

Appellate Case: 21-3903    Page: 8    Date Filed: 03/10/2022 Entry ID: 5135021

# JURISDICTIONAL STATEMENT

Plaintiff-Appellee, D. Bart Rockett, sued Defendant-Appellant, Judge Eighmy under 42 U.S.C. § 1983 for allegedly violating the constitutional rights of his children, K.R. and B.R. *See* App. 8; R. Doc. 1, at 2. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

On December 9, 2021, the District Court denied Judge Eighmy's motion to dismiss on the basis of absolute judicial immunity. *See* App. 180–84; R. Doc. 30, at 1–5. Judge Eighmy timely filed a notice of appeal on December 20, 2021. App. 185–87; R. Doc. 34, at 1–3. Denials of absolute judicial immunity are appealable collateral orders. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985); *Callahan v. Rendlen*, 806 F.2d 795, 796 (8th Cir. 1986).

1

# STATEMENT OF THE ISSUES

**I.** Whether ordering that K.R. and B.R. be held in jail after they refused to comply with Judge Eighmy's custody order and whether issuing the Pick Up Order to enforce the custody order were judicial acts.

Most apposite authorities:

- *Stump v. Sparkman*, 435 U.S. 349 (1978)

- *Hamilton v. City of Hayti*, 948 F.3d 921 (8th Cir. 2020)

- *Woodworth v. Hulshof*, 891 F.3d 1083 (8th Cir. 2018)

- *Newman v. Indiana*, 129 F.3d 937 (7th Cir. 1997)

- Mo. Ann. Stat. § 211.131

- Mo. Ann. Stat. § 211.401

- Mo. Ann. Stat. § 452.785

**II.** Whether Judge Eighmy acted in the clear absence of jurisdiction in engaging in those acts given that he is a judge of a court with subject-matter jurisdiction over the custody dispute involving K.R. and B.R.

Most apposite authorities:

- *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871)

- *Schottel v. Young*, 687 F.3d 370 (8th Cir. 2012)

- *White v. Bloom*, 621 F.2d 276 (8th Cir. 1980)

2

- *Schutter v. Seibold*, 632 S.W.3d 820 (Mo. Ct. App. 2021)

Appellate Case: 21-3903    Page: 11    Date Filed: 03/10/2022 Entry ID: 5135021

## STATEMENT OF THE CASE

Because this appeal arises out of a motion to dismiss, the relevant facts are those set out in the complaint, its attached exhibits, and the exhibits attached to Judge Eighmy's motion to dismiss and Mr. Rockett's opposition which are either incorporated by reference in the complaint or contain matters subject to judicial notice. *See Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012).

## I. The background

In 2009, a Taney County Circuit Court entered a judgment dissolving Bart Rockett's and Kami Ballard's marriage. App. 9; R. Doc. 1, at 3. As part of the divorce, the Circuit Court award the parents joint custody of K.R. and B.R. *See* App. 74–75; R. Doc. 15-1, at 2–3. Afterwards, the parents moved to Los Angeles where the children pursued careers in entertainment. *See* App. 9; R. Doc. 1, at 3. In 2013, Ms. Ballard asked a California court to modify the custody order and give her full custody of K.R. and B.R. *See* App. 9–10; R. Doc. 1, at 3–4.

In 2018, Ms. Ballard filed a modification petition in Taney County Circuit Court, which was assigned to Judge Eighmy, and which spawned

4

this litigation.[1]  *See* App. 11; R. Doc. 1, at 5.  After denying Mr. Rockett's motion to dismiss for lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Judge Eighmy set a hearing on Ms. Ballard's request for October 8, 2019.  *See* App. 11–12; R. Doc. 1, at 5–6.  Prior to that hearing, Mr. Rockett's counsel filed another motion challenging Judge Eighmy's jurisdiction under the UCCJEA.  *See id.*  Judge Eighmy again denied the motion, saying, "Court had a UCCJEA meeting with the California Judge and both Judge's [*sic*] were in agreement that Missouri has jurisdiction."  App. 17; R. Doc. 1, at 11.  As later clarified, the California judge declined jurisdiction in a call with Judge Eighmy.  *See* App. 85; R. Doc. 15-2, at 1.

On October 8, 2009, Mr. Rockett, Ms. Ballard, K.R. and B.R., and K.R.'s and B.R.'s guardian ad litem arrived at the courthouse.  *See* App. 13–15; R. Doc. 1, at 6–9.  Before the hearing, the guardian ad litem "indicated to the children that the judge was in charge, and that they would have to do what he said."  App. 14; R. Doc. 1, at 8.  The children

---

[1] Prior to his appointment as Associate Circuit Judge, Judge Eighmy had represented Bart Rockett's mother.  *See* App. 10–11; R. Doc. 1, at 4–5.

Appellate Case: 21-3903     Page: 13     Date Filed: 03/10/2022 Entry ID: 5135021

stayed in the courthouse lobby while Mr. Rockett and Ms. Ballard were in the courtroom with their attorneys and the guardian ad litem.  *Id.*

Instead of adjudicating Ms. Ballard's requested modification, the parents settled.  Per their agreement, "the children would go home that day with Kami" and stay with her.  App. 15; R. Doc. 1, at 9.  "Bart agreed to this arrangement in connection with the settlement."  App. 16; R. Doc. 1, at 10.  He alleged he felt pressured to do so.  *See* App. 16–17; R. Doc. 1, at 10–11.

"The settlement gave legal and physical custody to Kami, but allowed the children to be … with Bart" during certain times, with his time "beginning November 1st, 2019."  App. 16; R. Doc. 1, at 10; *see also* App. 92; R. Doc. 15-2, at 8.  While the specific statement that the children were to go with Ms. Ballard that night "was not memorialized in the 'Mother's Proposed Parenting Plan' or the handwritten notes," App. 16; R. Doc. 1, at 10, it follows from the requirement that Mr. Rockett's time with K.R. and B.R. started November 1, 2019.  Parties could enforce noncompliance with a contempt or family access motion.  *See* App. 87; R. Doc. 15-2, at 3.

Appellate Case: 21-3903     Page: 14     Date Filed: 03/10/2022 Entry ID: 5135021

After the parties informed Judge Eighmy of the settlement's terms, the guardian ad litem "stated on the record that he believed the settlement was in the children's best interests." App. 16; R. Doc. 1, at 10. So did Mr. Rockett and Ms. Ballard:  Under oath, they said the "agreement is in the best interests of the children." App. 17; R. Doc. 1, at 11.

After the hearing, Mr. Rockett left the courthouse and lingered outside talking about the settlement. *See* App. 18; R. Doc. 1, at 12. Court officers told him to leave after he tried to reenter with K.R.'s and B.R.'s phones. *See id.*  He left without giving the children their phones. *Id.*

## II.    Judge Eighmy orders officers to take K.R. and B.R. into custody after they refuse to comply with the custody agreement.

So the settlement agreement required K.R. and B.R. to go with Ms. Ballard that day.  The issue was the children "did not agree with the settlement and would not go with their mother" and told her so. *See* App. 17; R. Doc. 1, at 11.

This led to a conversation involving the children and Judge Eighmy in the lobby and a private conference room of the courthouse. *See* App. 18; R. Doc. 1, at 12.  Judge Eighmy told K.R. and B.R. "that he had

7

ordered that" they go with their mother and that "they had to go" with her. *Id.* He also said warned them of "the evils of Hollywood" and the entertainment industry. App. 19; R. Doc. 1, at 13. The children repeatedly said they did not want to go with their mother and defended their entertainment careers, saying "they 'respectfully disagreed'" with the judge. App. 18; R. Doc. 1, at 12.

In response to K.R.'s and B.R.'s refusal to comply with his orders, Judge Eighmy escorted the children to the courthouse jail. *See* App. 19; R. Doc. 1, at 13. There were two uniformed officers there, including the Chief Juvenile Officer of Taney County. *See* App. 19; R. Doc. 1, at 13; App. 56 & n.2; R. Doc. 15, at 4 & n.2. After the children "again stated to Judge Eighmy that they did not want to go with their mother" and that he "could not prevent them from working in the entertainment industry," Judge Eighmy "ordered the uniformed officers to lock" the children in the jail and left. App. 20; R. Doc. 1, at 14. After about an hour, Judge Eighmy returned and asked K.R. and B.R. whether they would "go with their mother" or go into foster care. App. 21; R. Doc. 1, at 15. K.R. and B.R. said they would comply, were released, and went with their mother. *See* App. 21–22; R. Doc. 1, at 15–16.

8

There is no allegation Judge Eighmy used force. Instead, "[h]e told the children to follow him." App. 19; R. Doc. 1, at 13. And Ms. Ballard, who was in the courthouse, *see* App. 21; R. Doc. 1, at 15, never objected.

## III. The Pick Up Order

After returning to Mr. Rockett's custody, K.R. and B.R. "refused to return to their mother's custody … ." App. 25; R. Doc. 1, at 19. "On May 11, 2020, Kami filed in Taney County a motion for civil contempt and a proposed order to show cause against Bart, alleging Bart was withholding custody of the children." *Id.* That led Judge Eighmy to order Mr. Rockett and K.R. and B.R. "to appear in his courtroom on August 13, 2020." App. 26; R. Doc. 1, at 20. They did not. *Id.* In response, Judge Eighmy issued "[a]n Order to Pick Up the children" (the "Pick Up Order") dated August 13, 2020. App. 26–27; R. Doc. 1, at 20–21; *see also* App. 42–43; R. Doc. 1-2, at 1, R. Doc. 1-3, at 1. Ms. Ballard also petitioned a Louisiana court for a civil warrant to return children, which the court signed. *See* App. 188; R. Doc. 1-5, at 1.[2]

---

[2] The district court sealed this document to protect K.R.'s and B.R.'s identities. *See* App. 47; R. Doc. 6, at 1; JA3 (Docket Entry 7). Judge Eighmy has moved to seal the document here.

Appellate Case: 21-3903     Page: 17     Date Filed: 03/10/2022 Entry ID: 5135021

On November 18, 2020, Union Parish sheriff's deputies arrived at Mr. Rockett's family farm saying "they were there to take their children to their mother" and that they "were enforcing Judge Eighmy's Pick-Up order … ." App. 27; R. Doc. 1, at 21. According to a Louisiana court, however, they acted pursuant to the civil warrant that court issued. *See* App. 188; R. Doc. 1-5, at 1. "The children told [the] deputies they would not leave Bart and would not go with Kami." App. 28; R. Doc. 1, at 22. Due to their refusal to go with Ms. Ballard, the Union Parish sheriff deputies detained K.R. and B.R. at a juvenile detention center for two days. *See* App. 29–30; R. Doc. 1, at 23–24. They were released into Mr. Rockett's custody after a hearing before a Louisiana judge. *See* App. 31; R. Doc. 1, at 25.[3]

After the detention of K.R. and B.R., Mr. Rocket asked the Louisiana court to recognize the October 2019 custody order and enforce and modify it. *See* App. 31; R. Doc. 1, at 25; App. 188; R. Doc. 1-5, at 1. The Louisiana court took jurisdiction, noting the California declined

---

[3] The Missouri Supreme Court vacated all of Judge Eighmy's orders issued after August 5, 2020, which included the Pick Up order. *See* App. 30; R. Doc. 1, at 25. Mr. Rockett provided the Missouri Supreme Court's order to the Louisiana judge, but does not allege it affected that court's decision to release K.R. and B.R. *See* App. 30–31; R. Doc. 1, at 24–25.

Appellate Case: 21-3903     Page: 18     Date Filed: 03/10/2022 Entry ID: 5135021

jurisdiction prior to Judge Eighmy's orders and saying that Judge Eighmy declined jurisdiction in a telephone conversation with the Louisiana judge. *See* App. 189–90; R. Doc. 1-5, at 2–3; *see also* App. 31; R. Doc. 1, at 25.

## IV. Procedural background and district court decision

Following the two detentions of K.R. and B.R., Mr. Rockett, on his children's behalf, filed a four count complaint pursuant to 42 U.S.C. § 1983 alleging that Judge Eighmy's actions violated K.R.'s and B.R.'s constitutional rights and seeking damages. *See* App. 36–40; R. Doc. 1, at 30–34.

Mr. Rockett alleged that Judge Eighmy lacked judicial immunity for K.R.'s and B.R.'s October 8th detention because "[p]ersonally seizing and jailing minor children, outside of the courtroom while court is not in session, is not a judicial act." App. 34; R. Doc. 1, at 28. Mr. Rockett specifically attacked the lack of formal procedures involved in the jailing. *See* App. 33–34; R. Doc. 1, at 27–28. Mr. Rockett also said, "Judge Eighmy acted in the clear absence of jurisdiction in personally seizing the children and personally jailing them." App. 35; R. Doc. 1, at 29.

11

As to the Pick Up Order, Mr. Rockett alleged that Judge Eighmy "acted in the clear absence of jurisdiction when issuing the Pick Up Order as to the children, who were neither parties to the litigation, nor in contempt or delinquency, and therefore he lacks judicial immunity for that Order." App. 35; R. Doc. 1, at 29.

Judge Eighmy moved to dismiss the complaint arguing, *inter alia*, that he enjoyed absolute judicial immunity. App. 49; R. Doc. 14, at 1. On December 9, 2021, the district court denied Judge Eighmy's motion. *See* App. 180–84; R. Doc. 30, at 1–5; *see also* Add. 1–5; 2021 WL 5855825. The court concluded that "the allegations, as pled, state a claim that would go beyond dismissal based on immunity," focusing on "[t]he allegations … that the judge acted without jurisdiction and outside his judicial role when personally taking the children to jail, then subsequently ordering them picked up in Louisana [*sic*], when there were no judicial proceedings pending that would allow for this judicial sanction." App. 183; R. Doc. 30, at 4. This appeal followed.

## SUMMARY OF ARGUMENT

This case involves a paradigmatic application of judicial immunity. On October 8, 2019, Judge Eighmy approved a custody agreement

12

between Ms. Ballard and Mr. Rockett that required K.R. and B.R. to go with Ms. Ballard that day. K.R. and B.R. told him they would not comply. So Judge Eighmy ordered court officers to take the minors into custody. Later, after Mr. Rockett failed to comply with the custody arrangement and failed to appear in court with K.R. and B.R., Judge Eighmy issued the Pick Up Order to enforce his custody decree.

Those are judicial acts. If a person does not obey a judicial decree, judges have the power to coerce compliance; if it is necessary to take a minor into custody for his welfare, judges have the power to issue that order. K.R. and B.R. did not comply with a judicial order (the custody agreement) that was issued for their welfare. Thus, Judge Eighmy's October 8, 2019, order to take K.R. and B.R. into custody was a judicial act. Likewise for the Pick Up Order. If a parent fails to comply with a custody arrangement or an order to bring a child to court, a judge can take steps to ensure compliance.

It is irrelevant that Judge Eighmy may have acted informally—or even atypically and improperly. Judicial immunity does not turn on whether a judge followed every punctilio of procedure or even whether a judge acted properly and within his authority. It turns on whether the

13

judge acted like a judge. Mr. Rockett's contrary arguments, which focus on *how* Judge Eighmy did what he did, cannot undermine that fact that *what* Judge Eighmy did is well within the scope of the judicial function.

Finally, Judge Eighmy indisputably had subject-matter jurisdiction over the custody dispute involving K.R. and B.R. Indeed, Mr. Rockett said as much in district court. Judge Eighmy is thus entitled to judicial immunity for ordering officers to take K.R. and B.R. into custody on October 8, 2019, and for issuing the Pick Up Order.

## STANDARD OF REVIEW

Judge Eighmy's entitlement to judicial immunity is a question of law reviewed *de novo*. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). Because this is an appeal from a denial of a motion to dismiss, "the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). That includes factual matter contained in documents attached to, or incorporated by reference in, the complaint, or subject to judicial notice. *See Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012).

14

# ARGUMENT

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). The reason: Judicial immunity protects "the finality of judgments," discourages "inappropriate collateral attacks" on court orders, and protects "judicial independence by insulating judges from vexatious action prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988); *see also*, *e.g.*, *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (per curiam); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871); *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 536 (1868); *Hamilton v. City of Hayti*, 948 F.3d 921, 925 (8th Cir. 2020); *Brown v. Griesenauer*, 970 F.2d 431, 435 (8th Cir. 1992); *Dykes v. Hosemann*, 776 F.2d 942, 945 n.11 (11th Cir. 1985) (en banc); *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985). The doctrine thus does more than protect judges; it forms a necessary part of a "well[-]ordered system of jurisprudence." *Bradley*, 80 U.S. at 347.

It is particularly necessary in child custody cases. Those are cases with a high risk of subsequent litigation against the presiding judge, for

Appellate Case: 21-3903    Page: 23    Date Filed: 03/10/2022 Entry ID: 5135021

they are cases that "excit[e] the deepest feelings" and—given the malleable legal standards that apply—are likely to create "great conflict[s] in the evidence and great doubt as to the law which should govern [the judge's] decision." *Bradley*, 80 U.S. at 348. "Absolute immunity is thus necessary to assure that judges … can perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978).

Judge Eighmy is thus immune unless one of "'two narrow sets of circumstances'" are present: (1) his actions were "'nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity,'" or (2) he acted "'in the complete absence of all jurisdiction.'" *Justice Network Inc. v. Craighead County*, 931 F.3d 753, 760 (8th Cir. 2019) (first quote from *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012), second and third quote from *Mireles*, 502 U.S. at 11–12); *see also Hamilton*, 948 F.3d at 925. Those circumstances are narrow indeed. "Exceptions to absolute immunity should not be created freely." *Moses v. Parwatikar*, 813 F.2d 891, 893 (8th Cir. 1987). So if it is close question about whether judicial immunity applies, it should. *See Norfleet v. Renner*, 924 F.3d 317, 319

16

(6th Cir. 2019) ("[W]e err on the side of granting immunity in close cases.").  This is not, however, a close case.

## I.  Judge Eighmy's actions were judicial acts.

"[T]he factors for determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see also Woodworth v. Hulshof*, 891 F.3d 1083, 1091 (8th Cir. 2018).  "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Justice Network Inc.*, 931 F.3d at 760 (quoting *Mireles*, 502 U.S. at 13 (quoting *Stump*, 435 U.S. at 362)).

### A.  Judge Eighmy's actions on October 8, 2019, were judicial acts.

#### 1.  *Ordering the detention of children who refuse to comply with a custody order is a function judges normally perform.*

According to Mr. Rocket and the District Court, one of the judicial acts at issue is Judge Eighmy "personally taking the children to jail" on October 8, 2019.  App. 183; R. Doc. 30, at 4; *see*, *e.g.*, App. 36; R. Doc. 1, at 30 (Count I); App. 37; R. Doc. 1, at 31 (Count II).  That is true, insofar

17

as he did escort K.R. and B.R. to the courthouse's detention center. *See* App. 19–20; R. Doc. 1, at 13–14. But it ignores why he did so. Prior to the detention order, Judge Eighmy had just approved a custody agreement whereby K.R. and B.R. would go home with Ms. Ballard. *See* App. 15–16; R. Doc. 1, at 9–10; App. 92; R. Doc. 15-2, at 8. The children told the judge they would not comply with that arrangement. *See* App. 18–19; R. Doc. 1, at 12–13. So, Judge Eighmy escorted the children to the courthouse jail and "ordered … uniformed officers" to put them in jail. App. 19–20; R. Doc. 1, at 13–14.

The question is therefore whether it is "within the scope of [Judge Eighmy's] judicial duties" to order that children who do not comply with a court-ordered custody arrangement be taken into custody. *Woodworth*, 891 F.3d at 1091. It is, for three reasons.

*First*, judges order individuals who refuse to comply, or otherwise undermine the efficacy of, a judicial decree to be jailed or otherwise punished. That is the contempt power, and what Judge Eighmy did on October 8, 2019, was an exercise that power, even if informal or unorthodox in manner. The informal meeting in the courthouse and the order to put K.R. and B.R. in jail are akin to a contempt hearing and

18

finding of contempt. Moreover, the detention was to (and did) coerce K.R.'s and B.R.'s compliance with the custody order, a hallmark of civil contempt decrees. *See*, *e.g.*, *Jakes, Ltd. v. City of Coates*, 356 F.3d 896, 901 (8th Cir. 2004).

"Holding contempt proceedings [and] finding a party in contempt … are all acts normally performed by a judge." *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986). That includes Missouri judges generally, *see* MO. ANN. STAT. § 476.110; *Smith v. Pace*, 313 S.W.3d 124, 129–30 (Mo. banc 2010), and judges presiding over custody proceedings specifically, *see* MO. ANN. STAT. § 452.400.3 (allowing courts to treat children's noncompliance with a visitation order as contempt). Indeed, the agreement between Mr. Rockett and Ms. Ballard contemplated enforcement via contempt motion. *See* App. 87; R. Doc. 15-2, at 3. The contempt power also includes the ability to hold people in contempt who are not parties to a proceeding before the judge, or who act contemptuously in the courthouse. "The inherent power of a judge to require order in and around the courtroom, including the immediately adjacent areas, is fundamental to the administration of justice." *United States v. Trudell*, 563 F.2d 889, 891 (8th Cir. 1977); *see also* MO. ANN.

STAT. § 476.110(4) (permitting courts to find "any person" in contempt for disobeying a court order); *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) (evaluating a case involving a nonparty held in contempt for ignoring a court order during court proceedings).

*Second*, it is normal for judges to issue orders—including orders taking minors into custody—for their welfare. In approving the parents' custody settlement, Judge Eighmy determined that the modification was "necessary to serve the best interests of" K.R. and B.R. MO. ANN. STAT. § 452.410.1. Both Mr. Rockett and Ms. Ballard agreed, on the record and under oath. *See* App. 17; R. Doc. 1, at 11 (noting that the parties agreed the settlement was in K.R.'s and B.R.'s best interests).[4] Thus, letting K.R. and B.R. go home with Mr. Rockett (assuming that would be possible, since he had left the courthouse) would not be in their interests. But that is what K.R. and B.R. wanted, and why they refused to go with Ms. Ballard.

---

[4] Mr. Rockett is barred from contesting that determination under the *Rooker-Feldman* doctrine, *see*, *e.g.*, *Heartland Academy Community Church v. Waddle (Heartland I)*, 335 F.3d 684, 689 (8th Cir. 2003) (discussing the doctrine), and principles of collateral estoppel, *see*, *e.g.*, *Miller v. Hubbert*, 804 S.W.2d 819, 820 (Mo. Ct. App. 1991).

20

In ordering K.R.'s and B.R.'s custody, then, Judge Eighmy was taking action to ensure their safety and well-being. That is a normal judicial function. For example, as the judge presiding over juvenile cases, *see* Mo. 46th Cir. Ct. R. 6.1.2, Judge Eighmy could issue orders to a juvenile officer to take custody of children, *see* MO. ANN. STAT. § 211.401.1(3), (4), for their welfare, *see* MO. ANN. STAT. § 211.131.1; *In re M.D.S.*, 837 S.W.2d 338, 342 (Mo. Ct. App. 1992) ("Section 211.131 provides that a child may be taken into custody if found to be 'without proper care, custody or support.'"). Similarly, Judge Eighmy, in presiding over a custody dispute, could "enter any orders necessary to ensure the safety of the child ... ordered to appear" at a custody hearing, MO. ANN. STAT. § 452.785.6—as K.R. and B.R. were, *see* App. 12–13; R. Doc. 1, at 6–7. A judge's authority under this section is broad. He may require, for example, family members present at a custody hearing to be drug tested. *See Rogers v. Gaston*, 2020 WL 1694796, at *5 (W.D. Mo. Apr. 7, 2020). Ordering children detained for their safety comfortably falls within the law's scope.

*Third*, Judge Eighmy acted to ensure the efficacy of his custody order. That is also a judicial function. Courts "generally [have] the

21

inherent power to make such proper orders as are necessary to effectuate [their] decrees," *State ex rel. Cullen v. Harrell*, 567 S.W.3d 633, 639 (Mo. banc 2019) (alteration omitted) (quoting *Benton v. Alcazar Hotel Co.*, 194 S.W.2d 20, 24–25 (Mo. 1946)), including child custody orders. *See Schutter v. Seibold*, 632 S.W.3d 820, 832 (Mo. Ct. App. 2021) (discussing family access orders).

None of that is to say that Judge Eighmy formally and properly exercised any of those powers. Mr. Rockett's references to him "personally seizing" K.R. and B.R. seem to focus on the fact that he escorted the children to the courthouse jail. That may well be unusual, but it is qualitatively different from acts courts have found non-judicial, such as assault, *see Liles*, 804 F.2d at 495, or stopping a motorist on the highway, *see Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).[5]

In any event, what Judge Eighmy did makes sense given the context. Court had ended for the day, and so it would be logical to assume that no court officers were nearby. Finding officers, walking back up to get the K.R. and B.R., and then having the officers and the children

---

[5] The district court discussed *Malina* as well as one other case, *Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978). *Zarcone* is irrelevant because it is not a judicial immunity case. *See id.* at 53

22

return to the jail instead of just walking K.R. and B.R. to the jail himself is inefficient and would not address K.R.'s and B.R.'s recalcitrance. Judicial immunity protects judges who must act, as Judge Eighmy did, in unusual circumstances by focusing on the type of act performed, not how it was performed. *See*, *e.g.*, *Mireles*, 502 U.S. at 13 ("[W]e look to the particular act's relation to a general function normally performed by a judge."); *cf. Newman*, 129 F.3d at 942 (noting the plaintiffs failed to "suggest a more sensible course the judge might have followed").

Thus, whatever procedural errors Judge Eighmy allegedly committed does not mean that he stopped acting as a judge and started acting like a police officer, prosecutor, or child kidnapper, as Mr. Rockett argued. *See*, *e.g.* App. 122–23; R. Doc. 20, at 13–14; App. 34–35; R. Doc. 1, at 28–29. "[T]he informal and *ex parte* nature of a proceeding has not been thought to imply that an act … was deprived of its judicial character." *Forrester*, 484 U.S. at 227. And even actions that are "improper under the circumstances" or the result of "the commission of grave procedural errors" are still judicial acts. *Hamilton*, 948 F.3d at 926 (quoting *Stump*, 948 F.3d at 926); *see Woodworth*, 891 F.3d at 1091–93 (holding that allegations of conspiracy, conflict of interest, and violations

Appellate Case: 21-3903     Page: 31     Date Filed: 03/10/2022 Entry ID: 5135021

of judicial ethics did not mean a judge was acting in a nonjudicial capacity).[6]

Such errors are really what this suit is about. Mr. Rockett basically admits that had Judge Eighmy engaged in enough judicial process in ordering the jailing of K.R. and B.R., he would be functioning as a judge. *See* App. 122; R. Doc. 1, at 13 (faulting Judge Eighmy for "not comport[ing] himself in any recognizable respect under Missouri law and procedure to the function of adjudicating criminal contempt"). But process, and even rectitude, does not define an action's nature and function, which is why "informality [does] not destroy" immunity. *Newman*, 129 F.3d at 941. "Immunity washes out errors, and absolute immunity washes out bad motives." *Id.* at 942.

Here, the nature and the function of Judge Eighmy's actions on October 8, 2019, were judicial—he ordered K.R. and B.R. to be taken into custody for defying a judicial order and for their welfare. That is something judges do.

---

[6] Under Missouri law, contempt "may be punished summarily," MO. ANN. STAT. § 476.130, and Missouri courts can place children in protective custody "pursuant to an ex parte request," *In re M.D.S.*, 837 S.W.2d at 342.

24

### 2. *K.R. and B.R. dealt with Judge Eighmy in his judicial capacity.*

K.R. and B.R. also interacted with Judge Eighmy in his judicial capacity. They were in the courthouse for a hearing before him to determine whether to modify K.R.'s and B.R.'s custody arrangement. *See* JA12–13; R. Doc. 1, at 6–7. Before the custody hearing, the guardian ad litem told K.R. and B.R. "that the judge was in charge, and that they would have to do what he said." JA14; R. Doc. 1, at 8. The guardian ad litem also said "he would try his best to have the children meet with the judge … ." *Id.* After the custody hearing, Judge Eighmy's interactions with K.R. and B.R. involved their compliance with his custody order. *See* JA18–19; R. Doc. 1, at 12–13.

It blinks reality to claim K.R. and B.R. interacted with Judge Eighmy as an individual given that context. *See*, *e.g.*, *Stump*, 435 U.S. at 362 ("We may infer from the record that it was only because Judge Stump served in that position that Mrs. McFarlin, on the advice of counsel, submitted the petition to him for his approval."). Judge Eighmy's interactions with K.R. and B.R. did not arise out of "events in his private nonjudicial life … in which he had a personal stake." *Woodworth*, 891 F.3d at 1092 (original alterations omitted) (quoting *Harris v. Deveaux*,

25

780 F.2d 911, 915 (11th Cir. 1986), distinguishing, *inter alia*, *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980)). They arose out of a custody dispute pending before him involving K.R. and B.R. Judge Eighmy was thus "approached *qua* judge" and so this is not a "situation … that could possibly spawn a successful § 1983 suit." *Harris*, 780 F.2d at 915 (quoting *Harper v. Merckle*, 638 F.2d 848, 856 n.9 (5th Cir. Unit B Mar. 1981)); *see McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972) (finding a judge immune for holding the parents of a defendant in contempt when they visited his chambers in part because "the controversy centered around a case then pending before the judge").

## B.     Issuing the Pick Up Order was a judicial act.

Just as Judge Eighmy's order on October 8, 2019, is a judicial act, so, too, is the Pick Up Order. Missouri judges have authority to issue orders taking minors into custody or to ensure their appearance at custody hearings. *See* MO. ANN. STAT. §§ 452.785.1, .2; 452.885.1, .2. Moreover, Judge Eighmy issued the Pick Up Order in response to a filing by Ms. Ballard stating the Mr. Rockett was not complying with the custody arrangement and Mr. Rockett's failure to appear in court with K.R. and B.R. *See* JA25–27; R. Doc. 1, at 19–21. The Pick Up Order thus

26

enforced Judge Eighmy's custody order, and enforcing court orders is a function Missouri judges perform. *See*, *e.g.*, *Schutter*, 632 S.W.3d at 832.

Finally, all involved were dealing with Judge Eighmy in his judicial capacity. The Pick Up Order was issued in the course of the custody dispute, and was issued after Mr. Rockett failed to appear with K.R. and B.R. at a custody hearing. *See* JA26; R. Doc. 1, at 26. No party would have expected Judge Eighmy to issue it in anything but his judicial capacity. *See Woodworth*, 891 F.3d at 1091 ("Properly framed, the relevant inquiry is whether" the action "fell within the scope of [a judge's] judicial duties.").

Thus, the Pick Up Order is a judicial act—as even Mr. Rockett agrees. In his complaint, Mr. Rockett alleged that Judge Eighmy did not enjoy immunity for the Pick Up Order only because he "acted in the clear absence of jurisdiction" in issuing it. JA35; R. Doc. 1, at 29. And in his opposition to Judge Eighmy's motion to dismiss, Mr. Rockett admitted "that issuing an order is a judicial act," and so rested "his no-immunity argument as to the Pick Up Order on the second factor: the clear absence of jurisdiction." JA127–18; R. Doc. 20, at 18–19.

27

## II. Judge Eighmy did not act in the clear absence of jurisdiction.

Thus, all the acts Mr. Rockett complains of are judicial acts for which Judge Eighmy enjoys immunity unless this case falls within an "extremely limited exception to [the] general rule [of immunity]: when judges act in the 'clear absence of all jurisdiction.'" *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994) (quoting *Stump*, 435 U.S. at 357). "Limited" means exactly that. "The Supreme Court has instructed [courts] to construe broadly 'the scope of the judge's jurisdiction … where the issue is the immunity of a judge." *Schottel*, 687 F.3d at 373 (quoting *Stump*, 435 U.S. at 356) (second alteration in the original).

The analysis here is the same for Judge Eighmy's October 8, 2019, orders and the Pick Up Order because both orders stem from the same custody dispute. The question is whether Judge Eighmy had subject-matter over the custody dispute. "It is established that a judge is immune from liability for damages if he had jurisdiction over the subject matter and if he acted in his judicial capacity." *Billingsley v. Kyser*, 691 F.2d 388, 389 (8th Cir. 1982) (per curiam); *see also Birch v. Mazander*, 678 F.2d 754, 755 (8th Cir. 1982) (same) (gathering cases).

28

Mr. Rockett claimed below that personal jurisdiction over K.R. and B.R. is necessary too. *See* JA132–33; R. Doc. 20, at 23–24 (claiming Judge Eighmy needed personal jurisdiction over K.R. and B.R. too); JA181; R. Doc. 30, at 2 (noting that Mr. Rockett made that argument).

Mr. Rockett is wrong. There are, to be sure, statements from this Court indicating that a judge must have personal jurisdiction as well as subject matter jurisdiction in order to enjoy immunity. *See Duba v. McIntyre*, 501 F.2d 590, 592 (8th Cir. 1974) (per curiam); *Brictson v. Woodrough*, 164 F.2d 107, 109 (8th Cir. 1947). But those statements are dicta, *see Rankin v. Howard*, 633 F.2d 844, 848 n.11 (9th Cir. 1980) (saying the language from *Duba* is dicta), *overruled by Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986) (en banc), and this Court has treated them as such, analyzing judicial immunity numerous times without considering personal jurisdiction, *see*, *e.g.*, *Hamilton*, 948 F.3d at 925; *Justice Network, Inc.*, 931 F.3d at 762; *Schottel*, 687 F.3d at 374.

It is also dicta that is "contrary to Supreme Court … precedent." *Dykes v. Hosemann*, 776 F.2d 942, 948 (11th Cir. 1985) (en banc); *see John v. Barron*, 897 F.2d 1387, 1392 (7th Cir. 1990); *Ashelman*, 793 F.2d at 1077–78; *Green v. Maraio*, 722 F.2d 1013, 1017 (2d Cir. 1983). In

29

*Bradley*, for example, the appellant argued that a judge did not have judicial immunity because he lacked both subject-matter and personal jurisdiction over the attorney whom the judge had struck from the bar rolls. *See Bradley*, 80 U.S. at 343 ("Without then having summoned Mr. Bradley, and having given to him an opportunity to be heard, the court had no jurisdiction of Mr. Bradley's *person* or of any case relating to him. It is not enough that it have jurisdiction over the subject-matter of the complainant generally; it must have jurisdiction over the particular case, and if it have not, the judgment is void *ab initio*.") (emphasis added) (original emphasis omitted). The Supreme Court rejected the argument, distinguishing between acts done in "excess of jurisdiction and the clear absence of all jurisdiction *over the subject-matter*." *Id.* at 351 (emphasis added). The examples the Court provided likewise focused on a court's subject-matter jurisdiction. *See id.* at 352–53. Later rulings affirmed that focus. *See Stump*, 435 U.S. at 357 ("The Court of Appeals correctly recognized that the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction *over the subject matter before him*.") (emphasis added).

30

So Judge Eighmy is entitled to immunity for his actions on October 8, 2019, and the Pick Up Order if he is a "judge[] of [a] court of superior or general jurisdiction … ." *Bradley*, 80 U.S. at 351; *see also Stump*, 435 U.S. at 359.

He is. The circuit courts of Missouri are courts "of general jurisdiction, having 'original jurisdiction over all cases and matters, civil and criminal.'" *White v. Bloom*, 621 F.2d 276, 279 (8th Cir. 1980). (quoting MO. CONST. art. V, § 14(a)). That language is "plenary," and so embraces all civil cases, including Mr. Rockett's and Ms. Ballard's custody dispute. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253–54 (Mo. banc 2009); *see also Ketteman v. Ketteman*, 347 S.W.3d 647, 653 (Mo. Ct. App. 2011). Associate circuit judges have the same subject-matter jurisdiction. *See, e.g.*, MO. CONST. art V, § 17; *United States v. Neil*, 407 F. App'x 993, 994 (8th Cir. 2011); *Pearman v. Dep't of Soc. Servs.*, 20 S.W.3d 540, 542 n.4 (Mo. Ct. App. 2000); *State ex rel. M.D.K. v. Dolan*, 968 S.W.2d 740, 743 (Mo. Ct. App. 1998). As Mr. Rockett told the district court: "Missouri associate circuit judges have nearly unfettered subject matter jurisdiction. ... Judge Eighmy generally had subject

31

matter jurisdiction over custody cases, as well as delinquency cases and contempt cases." JA128–29; R. Doc. 20, at 19–20.[7]

That is sufficient here just as it has been sufficient in numerous cases holding that judges did not act in clear absence of jurisdiction when they acted pursuant to similarly broad grants of general jurisdiction. *See*, *e.g.*, *Stump*, 435 U.S. 358–60; *Justice Network Inc.*, 931 F.3d at 762; *Schottel*, 687 F.3d at 374; *Patten v. Glaser*, 771 F.2d 1178, 1179 (8th Cir. 1985) (per curiam). Indeed, since Judge Eighmy's actions on October 8, 2019, and issuance of the Pick Up Order were to enforce his custody order, they were acts "taken in the very aid of [his] jurisdiction over a matter before him" and thus "cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

Whether Judge Eighmy had UCCJEA "jurisdiction" and whether the custody modification was void for due process violations are irrelevant, *see* JA181; R. Doc. 20, at 2 (noting those as Mr. Rockett's arguments), for neither affected Judge Eighmy's subject-matter jurisdiction over the custody dispute. The UCCJEA dictates "whether a

_____

[7] Indeed, while he alleged that Judge Eighmy acted in the clear absence of jurisdiction on October 8, 2019, *see* JA35; R. Doc. 1, at 29, Mr. Rockett never opposed Judge Eighmy's motion to dismiss on that basis.

32

Missouri court has the statutory authority to grant relief in a particular matter, not whether a Missouri court has subject matter jurisdiction." *Blanchette v. Blanchette*, 476 S.W.3d 273, 279 (Mo. banc 2015). It is of no jurisdictional relevance. Indeed, as to the Pick Up Order, it is the rule that "unless and until the custody determination is modified by a court having jurisdiction, the trial court has authority to enforce the current determination even though it may have lost jurisdiction to modify it" under the UCCJEA. *Schutter*, 632 S.W.3d at 833.

In any event, Judge Eighmy had UCCJEA jurisdiction. The original custody decree was entered in Taney County Circuit Court, of which Judge Eighmy is a judge, and thus that court had "exclusive continuing jurisdiction" over K.R.'s and B.R.'s custody plan until it determined otherwise or declined jurisdiction. MO. ANN. STAT. § 452.745.1–.2. Neither happened before October 8, 2019, or the issuance of the Pick Up Order. Indeed, the California trial court declined jurisdiction prior to October 8, 2019. *See* JA86; R. Doc. 15-2, at 2. Thus, Judge Eighmy had UCCJEA jurisdiction even treating this as an original child custody hearing. *See* MO. ANN. STAT. §§ 452.740.1(2), (3); 452.745.3.

33

As to the alleged due process violations, "[j]udicial immunity extends even to 'the commission of grave procedural errors.'" *Hamilton*, 948 F.3d at 926 (quoting *Stump*, 435 U.S. at 359). Regardless, whether a judgment is void for due process violations is separate from whether a judgment is void for want of subject-matter jurisdiction. *See In re Expungement of Arrest Records Related to Brown*, 226 S.W.3d 147, 150 (Mo. banc 2007). So even if Mr. Rockett is correct that the custody modification of October 31, 2019, was void for due process violations, *see* JA134; R. Doc. 20, at 25, that says nothing about whether Judge Eighmy had subject-matter jurisdiction over the custody dispute.

## CONCLUSION

For those reasons, Judge Eighmy respectfully asks the Court to reverse the District Court's denial of his motion to dismiss on the basis of judicial immunity and remand with instructions to dismiss the case.

34

Dated: March 9, 2022

Respectfully submitted,

**ERIC S. SCHMITT**
*Attorney General*

/s/ *Michael E. Talent*
Michael E. Talent, CA 322220
 Deputy Solicitor General

*Attorney for Defendant-Appellant*

Appellate Case: 21-3903   Page: 43   Date Filed: 03/10/2022 Entry ID: 5135021

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the typeface and formatting requirements of Fed. R. App. P. 27 and 32, that it is written in Century Schoolbook 14-point font, and that it contains 7,166 words as determined by the word-count feature of Microsoft Word. Both the brief and addendum have been scanned for viruses and are virus-free.

*/s/ Michael E. Talent*

Appellate Case: 21-3903    Page: 44    Date Filed: 03/10/2022 Entry ID: 5135021

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system, and I will serve a copy of the foregoing on all participants in the case who are not registered CM/ECF users by mailing a copy of the same, first-class, postage paid, to the address listed on the Court's CM/ECF system.

*/s/ Michael E. Talent*

Appellate Case: 21-3903    Page: 45    Date Filed: 03/10/2022 Entry ID: 5135021