No. 21-3903

_____

United States Court of Appeals
for the Eighth Circuit
_____

D. BART ROCKETT,
as next friend of his minor children K.R. and B.R.,
Plaintiff-Appellee,

v.

THE HONORABLE ERIC EIGHMY,
Defendant-Appellant.

_____

Interlocutory Appeal from the United States District Court
for the Western District of Missouri
The Honorable Douglas Harpool

_____

APPELLEE'S BRIEF
_____

Respectfully submitted,

Attorneys for Plaintiff-Appellee

Hugh A. Eastwood, 62058MO          W. Bevis Schock, 32551MO
Attorney at Law                     Attorney at Law
7911 Forsyth Blvd., Ste. 300        7777 Bonhomme Ave., Ste. 1300
St. Louis, Missouri 63105-3825      St. Louis, MO  63105
hugh@eastwoodlawstl.com             wbschock@schocklaw.com
(314) 809 2343                      Fax:      314-721-1698
(314) 228 0107 eFax                 Voice:    314-726-2322

## Summary of the Case, and Request for Oral Argument

Judge Eighmy heard a child custody modification case in Taney County, Missouri concerning two children, K.R. and B.R., longtime residents in California. Despite their father's objection to jurisdiction, the parents settled on the record.

After court proceedings had ended for the day, the children stated to their mother in the lobby that they did not want to leave with her. Judge Eighmy approached the children, and personally seized and jailed them in adult cells for approximately an hour to "teach them a lesson." He did this without a judicial proceeding, order, or judgment as to contempt, delinquency, or probable cause. There is no record. He was not functioning as a judge normally does.

Months later, when the children were quarantining in Louisiana during Covid-19, Judge Eighmy issued a Pick Up Order. But no proceeding was before him that warranted that sanction, and he acted in the clear absence of UCCJEA subject matter and personal jurisdiction. The children were confined for two days. During the first day, the Missouri Supreme Court issued a writ of prohibition removing Judge Eighmy from the modification case and vacating his orders.

The father, D. Bart Rockett, as next friend of his children, filed § 1983 claims, for which the district court denied Judge Eighmy judicial immunity. Rockett requests 15 minutes of oral argument to review what the district court called "very unique" immunity issues.

# Table of Contents

Table of Authorities ........................................................ i

Jurisdictional Statement ................................................ 1

Statement of the Issues.................................................. 2

Statement of the Case ................................................... 3

Summary of the Argument.......................................... 15

Standard of Review...................................................... 17

Argument...................................................................... 18

I.    Personally seizing and jailing children outside of a judicial

proceeding is functionally not judging.......................... 20

a.  Judge Eighmy did not function as a judge, but rather as a

police officer or a prosecutor .................................... 20

b.  The seizure and jailing were not pursuant to a judicial

proceeding or order ................................................. 25

c.  The seizure did not arise directly and immediately out of the

children approaching Judge Eighmy for judicial relief............ 31

II.    Judge Eighmy's Pick Up Order was issued in the clear absence of

jurisdiction, not in excess of jurisdiction....................... 33

a.  The UCCJEA statute and case law are jurisdictional and

circumscribe Judge Eighmy's authority to issue the Pick Up

i

Order ............................................................................... 33

b. Judge Eighmy lacked personal jurisdiction ............................ 41

c. Judge Eighmy issued the Pick Up Order in his enforcement
capacity for a delinquency case or issue that was not before
him ............................................................................... 45

d. This is a "rare" case where the underlying judgment is void for
due process violations, which is why the Missouri Supreme
Court entered a writ of prohibition against Judge Eighmy ...... 49

e. The Union Parish civil commitment warrant does not break
the chain of causation ................................................... 50

Conclusion ............................................................... 51

Certificate of Compliance ............................................... 53

Certificate of Service ................................................... 53

# Table of Authorities

**Cases**

*Ahlberg v. Chrysler Corp.,* 481 F.3d 630 (8th Cir. 2007) ........................... 50

*Al–Hawarey v. Al–Hawarey,* 388 S.W.3d 237 (Mo. Ct. App. 2012)..... 38, 40

*Ammons v. Baldwin,* 705 F.2d 1445 (5th Cir. 1983) ................................... 22

*Archie v. Lanier,* 95 F.3d 438 (6th Cir. 1996) ............................................. 22

*Arkansas Department of Human Services v. Cox,* 349 Ark. 205
(Ark. 2002) ...................................................................................... 47

*Ashelman v. Pope,* 793 F.2d 1072 (9th Cir. 1986)....................................... 43

*Birch v. Mazander,* 678 F.2d 754 (8th Cir. 1982) ................................. 19, 43

*Blanchette v. Blanchette,* 476 S.W.3d 273 (Mo. 2015) ........................*passim*

*Bradley v. Fisher,* 80 U.S. 335, 13 Wall. 335 (1872)...........................*passim*

*Brendlin v. California,* 551 U.S. 249 (2007) ............................................... 22

*Briggs v. Malley,* 748 F.2d 715 (1st Cir. 1984) ........................................... 51

*Brown v. Griesenauer,* 970 F.2d 431 (8th Cir. 1992)................................... 18

*Burgett v. Thomas,* 509 S.W.3d 840, 844 (Mo. Ct. App. 2017)................... 38

*Butz v. Economou,* 438 U.S. 478 (1978)...................................................... 18

*Coursey v. Superior Ct.,* 194 Cal. App. 3d 147, 239 Cal. Rptr. 365 (1987)......
...................................................................................... 28

*Craig v. Harney,* 331 U.S. 367 (1947).......................................................... 29

*Curtis v. Tozer,* 374 S.W.2d 557 (Mo. Ct. App. 1964)................................ 28

Appellate Case: 21-3903    Page: 5    Date Filed: 04/11/2022 Entry ID: 5146117

*D.R.P. v. M.P.P.,* 484 S.W.3d 822 (Mo. Ct. App. 2016) ............................ 28

*Dawn v. Ciavarella,* No. 3:10-CV-0797, 2010 WL 3122858 (M.D. Pa. Aug. 9, 2010) ................................................................. 22

*De Rubio v. Herrera,* 541 S.W.3d 564 (Mo. Ct. App. 2017) ............ 2, 26, 30

*Duba v. McIntyre,* 501 F.2d 590 (8th Cir. 1974) ................................... 36, 42

*Dykes v. Hosemann*, 743 F.2d 1488 (11th Cir. 1984) ............................ 43, 44

*Estin v. Estin,* 334 U.S. 541 (1948) ................................................................ 42

*Forrester v. White,* 484 U.S. 219 (1988) ............................................... *passim*

*Friedman v. Eighth Judicial Dist. Court of State, ex rel. County of Clark,* 264 P.3d 1161 (Nev. 2011) ................................................................. 40

*Geiler v. Liberty Ins. Corp.,* 621 S.W.3d 536 (Mo. Ct. App. W.D. 2021) ... 42

*Gharachorloo v. Akhavan,* 67 A.D.3d 1013, 889 N.Y.S.2d 256 (N.Y. App. Div. 2009) ................................................................................ 40

*Green v. Maraio,* 722 F.2d 1013 (2d Cir. 1983) ........................................... 43

*Greenman v. Jessen,* 787 F.3d 882 (8th Cir. 2015) ...................................... 20

*Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974) ........................... 2, 22, 23

*Gross v. Weber,* 186 F.3d 1089 (8th Cir. 1999) ............................................ 17

*H.T. v. Cleburne County Dept. of Human Resources,* 163 So.3d 1054 (Ala. Civ. App. 2014) ......................................................................... 40

*Hager v. Ark. Dep't of Health,* 735 F.3d 1009 (8th Cir. 2013) .................... 17

*Hamilton v. City of Hayti,* 948 F.3d 921 (8th Cir. 2020) ....................... 18, 44

*Harignordoquy v. Barlow,* 313 P.3d 1265 (Wyo. 2013) .............................. 40

*Harley v. Oliver,* 539 F.2d 1143 (8th Cir. 1976) ......................................... 42

Appellate Case: 21-3903     Page: 6     Date Filed: 04/11/2022 Entry ID: 5146117

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ............................................. 19, 43

*Harshberger v. Harshberger,* 724 N.W.2d 148 (N.D. 2006) ...................... 40

*Hartman v. Moore,* 547 U.S. 256 (2006) ...................................................... 31

*Heartland Academy Community Church v. Waddle,* 427 F.3d 525
    (8th Cir. 2005) ...................................................................................... 46

*Hightower v. Myers,* 304 S.W.3d 727 (Mo. banc 2010) .................. 37, 38, 40

*Holloway v. Walker,* 765 F.2d 517 (5th Cir. 1985) ...................................... 43

*In Interest of M. K. R,* 515 S.W.2d 467 (Mo. 1974) .................................... 35

*In re A.R.B.,* 586 S.W.3d 846 (Mo. Ct. App. W.D. 2019) ............................ 42

*In re Expungement of Arrest Records Related to Brown v. State,*
    226 S.W.3d 147 (Mo. banc 2007) ....................................................... 49

*In re Guardianship of K.B.,* 233 A.3d 328 (2019) ........................................ 40

*In re Interest of Arnold,* 532 S.W.3d 712, 717 (Mo. Ct. App. 2017) ........... 37

*In re Interests of A.A.-F.,* 444 P.3d 938 (Kan. 2019) ................................... 39

*In re J.W.,* 53 Cal.App.5th 347 (Cal. Ct. App. 2020) ................................... 41

*In re Jaden D.,* D054873 (Cal. Ct. App. Nov. 20, 2009) .............................. 39

*In re Marriage of Hendrix,* 183 S.W.3d 582 (Mo. banc 2006) .................... 34

*In the Interest of D.S.,* 602 S.W.3d 504 (Tex. 2020) .................................... 40

*J.C.W. v. Wyciskalla,* 275 S.W.3d 249 (Mo. 2009) .............................. *passim*

*Jakes, Ltd. v. City of Coates,* 356 F.3d 896 (8th Cir. 2004) ........................ 29

*Johnson v. De Grandy,* 512 U.S. 997 (1994) .................................................. 1

Appellate Case: 21-3903    Page: 7    Date Filed: 04/11/2022 Entry ID: 5146117

*Justice Network Inc. v. Craighead Cnty.,* 931 F.3d 753 (8th Cir. 2019)..........
................................................................................... 18, 44

*Katz v. Murphy,* 165 P.3d 649 (Alaska 2007)................................ 47

*Ketteman v. Ketteman,* 347 S.W.3d 647 (Mo. App. W.D. 2011)..........*passim*

*King v. Myers,* 973 F.2d 354 (4th Cir. 1992)................................ 20

*Kontrick v. Ryan,* 540 U.S. 443 (2004).......................................... 34

*La Presto v. La Presto,* 285 S.W.2d 568 (Mo.1955)..................... 49

*Levy v. Ohl,* 477 F.3d 988 (8th Cir. 2007)..................................... 20

*Liles v. Reagan,* 804 F.2d 493 (8th Cir. 1986) ............................. 29

*Lopez v. Vanderwater,* 620 F.2d 1229 (7th Cir. 1980) .......... 21, 33

*Lynch v. Johnson,* 420 F.2d 818 (6th Cir. 1970) .......................... 22

*Malina v. Gonzales,* 994 F.2d 1121 (5th Cir. 1993)...............*passim*

*Martin v. Hendren,* 127 F.3d 720 (8th Cir. 1997) ................*passim*

*McAlester v. Brown,* 469 F.2d 1280 (5th Cir. 1972) ........ 27, 32, 46

*McMilian v. Rennau,* 619 S.W.2d 848 (Mo. Ct. App. 1981)........ 28

*Mireles v. Waco,* 502 U.S. 9 (1991)........................................*passim*

*Morrell v. Mock,* 270 F.3d 1090 (7th Cir. 2001) .......................... 46

*Nestle v. Johns,* 452 S.W.3d 753 (Mo. Ct. App. E.D. 2015)........ 42, 49

*Newman v. Indiana,* 129 F.3d 937 (7th Cir. 1997) ....................... 22

*Noble v. Shawnee Gun Shop, Inc.,* 316 S.W.3d 364 (Mo. Ct. App. 2010)... 39

*Odom v. Langston,* 358 Mo. 241, 213 S.W.2d 948 (Mo. banc 1948) .......... 27

*Officer v. Blankenship*, 555 S.W.3d 449 (Ky. Ct. App. 2018) .................... 40

*Patel v. Patel*, 380 S.W.3d 625 (Mo. Ct. App. 2012) ................................... 42

*Pierson v. Ray*, 386 U.S. 547 (1967) ...................................................... *passim*

*Pogue v. Swink*, 284 S.W.2d 868 (Mo. 1955) ............................................. 46

*Prof'l Funding Co. v. Bufogle*, 617 S.W.3d 509 (Mo. Ct. App. 2021) .......... 6

*Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980) ....................................... 43

*Rogers v. Gaston*, No. 6:19-03346-CV-RK, 2020 WL 1694796
    (W.D. Mo. April 7, 2020) ................................................................... 32

*Rosen v. Celebrezze*, 883 N.E.2d 420 (2008) ............................................. 40

*Rosen v. Rosen*, 664 S.E.2d 743 (W.Va. 2008) ........................................... 40

*Ryan v. Scoggin*, 245 F.2d 54 (10th Cir. 1957) .......................................... 42

*S.L.J. v. R.J*, 778 S.W.2d 239 (Mo. Ct. App. 1989). .................................... 49

*Schaeffer v. Schaeffer*, 471 S.W.3d 367 (Mo. Ct. App. S.D. 2015) ............. 40

*Schottel v. Young*, 687 F.3d 370 (8th Cir. 2012) ................................. *passim*

*Schroeder v. Schroeder*, 658 N.W.2d 909 (Minn. Ct. App. 2003) ............... 40

*Schutter v. Seibold*, 632 S.W.3d 820 (Mo. Ct. App. 2021*)* .................. *passim*

*Shanks v. Shanks*, 603 S.W.2d 46 (Mo. Ct. App. 1980) ........................... 281

*Smith v. Pace*, 313 S.W.3d 124 (Mo. banc 2010) ....................................... 29

*Sophian Plaza Ass'n v. City of Kansas City*, 584 S.W.3d 784 (Mo. 2019) .. 26

*State ex rel. Burrell-El v. Autrey*, 752 S.W.2d 895 (Mo. Ct. App. 1988) .... 26

*State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573 (Mo. 1994) ............. 28

Appellate Case: 21-3903    Page: 9    Date Filed: 04/11/2022    Entry ID: 5146117

*State ex rel. Cullen v. Harrell,* 567 S.W.3d 633 (Mo. 2019)................. 27, 29

*State ex Rel. Ferrara v. Neill,* 165 S.W.3d 539 (Mo. Ct. App. 2005) .......... 50

*State ex rel. Jones v. Eighmy,* No. SC97417 (Mo. April 30, 2019).............. 13

*State ex rel. S.M.H. v. Goldman,* 140 S.W.3d 280 (Mo. Ct. App. E.D. 2004) ................................................................................................. 50

*State ex. re. Rockett v. Eighmy,* No. SC98716 (Mo. banc Nov. 19, 2020) .. 13

*Stauffer v. Temperle,* 794 N.W.2d 317 (Iowa Ct. App. 2010)..................... 40

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998)........................ 34

*Stern v. Mascio,* 262 F.3d 600 (6th Cir. 2001) ............................................ 43

*Stump v. Sparkman,* 435 U.S. 349 (1978)............................................... *passim*

*Supreme Court of Va. v. Consumers Union,* 446 U.S. 719 (1980)......... 18, 46

*Thompson v. Shock,* 852 F.3d 786 (8th Cir. 2017) ...................................... 41

*United States v. Perdoma,* 621 F.3d 745 (8th Cir. 2010) ............................ 22

*Vanderbilt v. Vanderbilt,* 354 U.S. 416 (1957)............................................ 42

*Wade v. Bethesda Hospital,* 337 F.Supp. 671 (S.D. Ohio 1971)................. 36

*White v. Bloom,* 621 F.2d 276 (8th Cir. 1980)............................................ 43

*Wiggins v. Hess,* 531 F.2d 920 (8th Cir. 1976).......................................... 43

*Williams v. Williams,* 532 F.2d 120 (8th Cir. 1976) ................................... 43

*Woodworth v. Hulshof,* 891 F.3d 1083 (8th Cir. 2018) ............................... 32

*Zarcone v. Perry,* 572 F.2d 52 (2d Cir. 1978) ............................................ 23

Appellate Case: 21-3903    Page: 10    Date Filed: 04/11/2022 Entry ID: 5146117

## Constitutional Provisions

First Amendment, U.S. Const. ................................................................ 14, 28, 29

Fourteenth Amendment, U.S. Const. ................................................... 14, 34, 39

Mo. Const., Art. V § 17 ....................................................................... 34, 47

## Statutes

28 U.S.C. § 1331 ........................................................................................ 1

28 U.S.C. § 1343 ........................................................................................ 1

28 U.S.C. § 1738A ............................................................................... 36, 41

28 U.S.C. § 2201 ........................................................................................ 1

42 U.S.C. § 1983 .................................................................................... 1, 14

42 U.S.C. § 1988 ...................................................................................... 51

RSMo. 211.121 ......................................................................................... 45

RSMo. 211.131 ......................................................................................... 30

RSMo. 211.351 ......................................................................................... 45

RSMo. 211.401 ......................................................................................... 30

RSMo. 452.310 ......................................................................................... 27

RSMo. 452.400 ......................................................................................... 26

RSMo. 452.705 ......................................................................................... 27

RSMo. 452.725 ......................................................................................... 42

RSMo. 452.730 ......................................................................................... 39

Appellate Case: 21-3903     Page: 11     Date Filed: 04/11/2022 Entry ID: 5146117

RSMo. 452.740 ............................................................ 25, 36, 49

RSMo. 452.745 .................................................................. 5, 39

RSMo. 452.750 .................................................................... 39

RSMo. 452.765 .................................................................... 38

RSMo. 452.785 .................................................................... 47

RSMo. 452.800 .................................................................... 39

RSMo. 452.845 .................................................................... 37

RSMo. 452.865 .................................................................... 39

RSMo. 452.885 ................................................................ 30, 47

RSMo. 476.110 .................................................................... 29

RSMo. 478.220 .................................................................... 34

## Rules

Fed. R. App. P. 28 ................................................................ 51

Fed. R. App. P. 32 ................................................................ 51

Mo. R. Civ. P. 110.04 ......................................................... 27

## Other Authorities

1 A. Freeman, Judgments (5th Ed. 1925) § 322 ........................................... 49

1 Robert C. Casad & William B. Richman, Jurisdiction in Civil Actions
 § 4-1[1][b] (3d ed. 2004) ................................................................ 39

2A Mo. Prac., Methods of Prac.: Litigation Guide sec. 37.4 (4th ed.) ......... 27

Barbara Ann Atwood, *Child Custody Jurisdiction and Territoriality,*
 52 Ohio St. L.J. 369 (1991) ................................................................ 38

x

The Federalist No. 47 (James Madison) ...................................................... 47

Missouri Law Enforcement Juvenile Justice Guidelines and Recommended
        Practices (Feb. 2019) ........................................................................ 45

Oscar Wilde, The Importance of Being Earnest (1895) .............................. 13

UCCJEA § 201, cmt., 9-IA U.L.A. 673 (1999) ........................................... 30

Appellate Case: 21-3903    Page: 13    Date Filed: 04/11/2022 Entry ID: 5146117

## Jurisdictional Statement

Rockett agrees with Judge Eighmy that the district court had subject matter jurisdiction over his children's 42 U.S.C. § 1983 claims for damages under 28 U.S.C. §§ 1331 and 1343.

Rockett is not, however, seeking declaratory relief under 28 U.S.C. § 2201. Further, he is not seeking to re-litigate any state court proceeding. The *Rooker-Feldman* doctrine is inapplicable. *Cf. Johnson v. De Grandy,* 512 U.S. 997, 1005-06 (1994).

This Court has pendent jurisdiction over Judge Eighmy's interlocutory appeal because judicial immunity is immunity from suit. *Mireles v. Waco,* 502 U.S. 9, 10 (1991); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347 (1871).

1

## Statement of the Issues

I.    Personally seizing and jailing children outside of a judicial proceeding is functionally not judging.

Most Apposite Cases, and Constitutional and Statutory Provisions:

*De Rubio v. Herrera,* 541 S.W.3d 564 (Mo. Ct. App. 2017)

*Gregory v. Thompson,* 500 F.2d 59 (9th Cir. 1974)

*Malina v. Gonzales,* 994 F.2d 1121 (5th Cir. 1993)

II.   Judge Eighmy's Pick Up Order was issued in the clear absence of jurisdiction, not in excess of jurisdiction.

Most Apposite Cases, and Constitutional and Statutory Provisions:

*Blanchette v. Blanchette,* 476 S.W.3d 273, 278 (Mo. 2015)

*Ketteman v. Ketteman,* 347 S.W.3d 647 (Mo. Ct. App. W.D. 2011)

*Schutter v. Seibold,* 632 S.W.3d 820 (Mo. Ct. App. 2021)

RSMo. 452.740

2

## Statement of the Case

This is an interlocutory appeal by Judge Eighmy of the district court's denial of his judicial immunity at the Rule 12(b)(6) motion to dismiss stage.

## I.    Introduction

B.R. and K.R. are minors.  App. 7; R. Doc. 1, at 1; App. 10; R. Doc. 1, at 4; App. 28; R. Doc. 1, at 22.  They are represented in this case by their father D. Bart Rockett[1] as their next friend under F. R. Civ. P. 17(c)(2).  App. 8; R. Doc. 1, at 2. Their parents divorced in 2009 pursuant to a judgment issued by another judge in Taney County, Missouri.  App. 9; R. Doc. 1, at 3.  The children and their parents, notwithstanding the divorce, moved as a family unit to Los Angeles County, California, where the children attended public school and pursued careers in the entertainment industry.  *Id*.  By 2011, their mother had entered a relationship with another man, and in 2012 she moved to Arizona.  *Id*.  By agreement, the children stayed in California.  *Id*.  In 2013, their mother filed for a custody modification in California.  App. 9-10; R. Doc. 1, at 3-4.  That case has remained pending ever since.  App. 10; R. Doc. 1, at 4.  Their mother has variously claimed Arizona,

---

[1] Although the children and their father share a last name, the brief generally uses "Rockett" to describe Plaintiff-Appellee.  On information, the children's mother— not a party here—formerly used the last name "Rockett" but now uses her maiden name "Ballard."

Appellate Case: 21-3903    Page: 16    Date Filed: 04/11/2022 Entry ID: 5146117

California, Missouri, and Utah as her residences during the California case's pendency. *Id.*

## II. The 2018 Taney County custody modification case

In July 2018, while her 2013 Los Angeles modification case was still pending, the mother filed a new modification case in Taney County, to which Judge Eighmy was assigned. App. 11; R. Doc. 1, at 5. Judge Eighmy did not recuse himself despite a history of representing Rockett's mother that culminated in her firing him and having a falling out.[2] In August 2018, Judge Eighmy appointed a Guardian Ad Litem. App. 11; R. Doc. 1, at 5.

At the time of the mother's Missouri filing, it had been nine years since Rockett and the children had resided in Missouri. *Id.* Judge Eighmy later made a docket entry record on October 31, 2019, noting that no party resided in Missouri and "encourag[ing]" the mother "to register the judgment in Utah and request relief from that State's court under the emergency provisions of the UCCJEA." *Id.*; App. 23; R. Doc. 1, at 17.

---

[2] Judge Eighmy, before being elected to the bench, had served as counsel for Rockett's mother, Linda Luttenbacher, on several matters, including a divorce proceeding. (During that time Rockett and his mother were estranged. They have since reconciled. App. 10; R. Doc. 1, at 4.) Ms. Luttenbacher and then-Attorney Eighmy had a falling out over his alleged negligence in defending her in a traffic case, which resulted in her arrest on a failure to appear warrant. App. 11; R. Doc. 1, at 5. Judge Eighmy's conflicts of interest are not the basis for the children's § 1983 claims, but provide context—and perhaps an inference—for his motivation for his actions.

4

At the time of the filing, Judge Eighmy lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) because undisputedly the children (and their father) had no significant connection with Missouri for nine years, and substantial evidence was no longer available in Missouri concerning the children's care, protection, training, and personal relationships. RSMo. 452.740 and .745; *Blanchette v. Blanchette,* 476 S.W.3d 273, 278 (Mo. 2015); App. 11; R. Doc. 1, at 5. Rockett preserved the issue of lack of jurisdiction by timely motion, which Judge Eighmy denied. Missouri Rule 55.27(a) and (g). App. 11-12; R. Doc. 1, at 5-6.

Over the objection of both Rockett's counsel and the GAL, Judge Eighmy held an *ex parte* hearing with the mother's counsel on September 26, 2019, and confirmed that a hearing on jurisdiction and then trial would be held on October 8. A week later, Rockett retained new counsel, who filed a second motion to vacate for lack of jurisdiction. App. 12; R. Doc. 1, at 6. Another week later, the day before the October 8 hearing, both parents attended a separate custody hearing in Los Angeles before California Judge Joshua Wayser, who was presiding over the mother's original 2013 modification case. App. 13; R. Doc. 1, at 7. That evening, Rockett and the children traveled from California to Missouri for the hearing before Judge Eighmy. *Id.*

Appellate Case: 21-3903    Page: 18    Date Filed: 04/11/2022 Entry ID: 5146117

The next morning, the parents appeared with counsel before Judge Eighmy. The children sat in the courthouse lobby with their paternal grandmother and step-grandfather.  App. 13-14; R. Doc. 1, at 7-8.  The children were uncomfortable seeing their mother, and they initially refused to speak with her despite encouragement to do so by the GAL.  App. 14; R. Doc. 1, at 8.  The children also told their mother that they were "done with her" and encouraged her to drop the custody modification.  *Id.*

Inside the courtroom, Judge Eighmy did not take up the jurisdictional issue, but instead stated words to the effect of "go work this out, or the kids will be out of the entertainment industry."  App. 15; R. Doc. 1, at 9.  The parents negotiated a written settlement.  App. 15-16; R. Doc. 1, at 9-10.  Although the writing did not address which parent would take custody of the children that day, the parents informally understood that the children were to go with their mother that evening. *Id.*  Judge Eighmy made an oral record of the settlement.  App. 16; R. Doc. 1, at 10.  He also signed the parties' settlement document, but did not denominate it a judgment under Missouri law[3], instead requiring in a docket entry that the mother's counsel "prepare" a judgment.  App. 17; R. Doc. 1, at 11.

---

[3] *See Prof'l Funding Co. v. Bufogle,* 617 S.W.3d 509, 513 (Mo. Ct. App. E.D. 2021).

Judge Eighmy made a further docket entry that he had spoken with Judge Wayser in Los Angeles, and they had agreed that Missouri had jurisdiction. App. 17; R. Doc. 1, at 11. Such a telephone call, if it occurred as Judge Eighmy describes, does not follow with the jurisdiction determination requirements of the UCCJEA, in that the parties were neither allowed to participate in the communication, nor given the opportunity to present facts and legal arguments before a decision on jurisdiction was made. RSMo. 452.730; *Blanchette,* 476 S.W.3d at 280. Nor does the California court record reflect any such conversation or process, let alone termination in favor of Missouri jurisdiction. App. 25; R. Doc. 1, at 19.

Judge Eighmy then ended the hearing and his court session for the day. App. 17; R. Doc. 1, at 11. Rockett left the courthouse to retrieve the children's cell phones from his parked car. App. 18; R. Doc. 1, at 12. When he attempted to re-enter the courthouse, he was told by court officers to leave or be arrested. *Id.*

## III. Judge Eighmy personally seizes and jails the children

In the lobby area of the courthouse, after court proceedings had ended for the day, the children told their mother and Dr. Cindy Baker, a court-ordered child counselor, that they did not agree with the settlement and did not want to go with their mother. *Id.* Judge Eighmy, no longer hearing any judicial proceeding, entered the lobby and approached the children. *Id.* The children stated to him as

7

well that they did not want to go with their mother, either that evening or to Utah generally. *Id.* Judge Eighmy then took the children and Dr. Baker into a conference room off the lobby, and proceeded to lecture the children on the evils of Hollywood, their need to grow up "normal," and their need to go live with their mother in Utah. App. 19; R. Doc. 1, at 13. The children respectfully disagreed. *Id.*

Judge Eighmy became visibly agitated, and essentially stated "I will show you what I can do; I can put you in jail." *Id.* Judge Eighmy then led the children to adult detainee jail cells. *Id.* He directed the children to remove their shoes, socks, and jackets. App. 20; R. Doc. 1, at 14. He directed the boy, K.R., to remove a bracelet from a church camp, even after K.R. informed Judge Eighmy that he had made a religious commitment not to remove it. *Id.* Two uniformed officers, on Judge Eighmy's direction, then locked the children in separate, individual cells. *Id.* When the girl B.R. stood on a raised bed mat because her feet were cold, a male officer banged on the window and told her to get down. *Id.* The children suspected that officers were watching them on cameras, and so the children did not use the open toilets. App. 20-21; R. Doc. 1 at 14-15.

Approximately an hour of confinement passed. App. 21; R. Doc. 1, at 15. Judge Eighmy and the officers returned, and Judge Eighmy stated "Are you ready to listen to me? Ready to comply?" *Id.* Judge Eighmy then asked "Will you go

with your mother or do you want to go back in there?" *Id.* The girl B.R. stated "Respectfully, how can you just lock up kids? This isn't legal, we've done nothing wrong." *Id.* The boy K.R. added words to a similar effect. *Id.* Judge Eighmy then responded to the effect of: "How would you like me to take you away from your parents and send you to live in the Missouri foster care system?" *Id.* The children, fearing further jail time and/or foster care, stated they would go and live with their mother in Utah. *Id.*

Judge Eighmy and a female officer then returned the children to their mother in the courthouse lobby. *Id.* The female officer stated loudly to the mother "If you have any more problems with the kids, call me." *Id.* Judge Eighmy then yelled at the children until they again stated, under duress and in fear of further jailing and/or foster care, that they would go and live with their mother in Utah. App. 22; R. Doc. 1, at 16. The children then left with their mother. *Id.*

At no point were the children permitted to attend any part of any judicial proceeding. *Id.* At no point was either child adjudicated to be delinquent or in contempt, or found under probable cause to have committed a crime. *Id.* At no point did Judge Eighmy notify the GAL or Rockett that he was going to jail the children, or provide any opportunity for either party (let alone the children) to be heard. *Id.* At no point did Judge Eighmy make any judicial record or findings, or enter any orders or judgments, related to his personal seizure and jailing of the

9

children.  *Id.*  At no point were the children afforded any process of law related to the jailing.  *Id.*

Judge Eighmy states that he did not use any force, but rather merely "told the children to follow him."  Eighmy brief at 9 (citing App. 19; R. Doc. 1 at 13).  That ignores that Judge Eighmy acted under color of law by invoking his judicial authority in seizing the children, even if he did not use actual physical force.

Judge Eighmy also states that mother never objected.  Eighmy brief at 9.  But that is not alleged in the pleading, and there is no record of that.  There is no basis for Judge Eighmy to assert that he notified the children's mother, or provided her with an opportunity to be heard.   There was no motion or process of law afforded either parent—that is, either *party* to the custody modification case— related to jailing the children.  App. 22; R. Doc. 1, at 16.   In short, jailing the children was never an issue or a case before Judge Eighmy in any judicial proceeding.

## IV.   Judge Eighmy's Pick Up Order causes a second seizure of the children

In spring 2020, Rockett and the children moved to their family farm in Union Parish, Louisiana, to quarantine from the Covid-19 virus.  App. 25; R. Doc.

1, at 19.  At the time, Rockett had custody because the children were also working at a theater in Tennessee.  *Id.*

In May 2020, the mother filed a motion for civil contempt against Rockett in Judge Eighmy's court.  She also filed a proposed order to show cause against Rockett, alleging he was withholding custody of the children.  *Id.*  She made no filings related to picking up the children.  *Id.*

Judge Eighmy issued a show cause order for Rockett and the children to appear on August 13.  *Id.*  Rockett retained new counsel, who filed motions to disqualify Judge Eighmy for cause, to dismiss the civil contempt motion, to strike the proposed show-cause order, and to continue the August 13 hearing so that counsel could conduct discovery.  *Id.*  Rockett and the children did not appear at the August 13 hearing.  *Id.*  Rockett's new counsel advised them not to attend since Judge Eighmy had already held that no party lived in Missouri.  *Id.*  The new counsel attended the hearing in order to argue Rockett's pending motions.  *Id.*  Judge Eighmy denied all motions and "generally reset" the contempt action filed by the mother.  *Id.*  Judge Eighmy also made a docket entry finding Rockett in contempt of court for failure to produce the children at the hearing, and ordered a writ of body attachment against Rockett.  App. 27; R. Doc. 1, at 21; App. 43; R. Doc. 1-3.

At the same hearing, Judge Eighmy issued a separate Pick Up Order for the children. App. 27; R. Doc. 1, at 21; App. 42; R. Doc. 1-2. The Order does not cite to any statutory or other legal authority. *Id.* Pick Up Orders are authorized by Missouri law only as to capias orders related to juvenile delinquency, RSMo. 211.121, and there was no such petition or motion pending before Judge Eighmy as this was not a juvenile case. The UCCJEA does authorize warrants to take custody of children, but only where there is a petition alleging serious imminent physical harm or removal from Missouri, and a hearing. RSMo. 452.885. There was no such petition or hearing here.

On September 10, a few weeks later, Rockett filed a petition for writ of prohibition against Judge Eighmy, first in the Missouri Court of Appeals, and then in the Missouri Supreme Court. App. 27; R. Doc. 1, at 21; App. 142-52; R. Doc. 20-1, at 1-11.

On November 18, Union Parish deputies appeared at the family farm to execute the Pick Up Order. App. 27; R. Doc. 1, at 21. They handcuffed the children and read them their *Miranda* rights; the girl, B.R., asked for a lawyer, which was not then provided. App. 28; R. Doc. 1, at 22. The children were held in solitary confinement for two days in separate cells at a Louisiana juvenile detention center, and denied visitation by Rockett. App. 30; R. Doc. 1, at 24.

On November 19, the children's first full day of confinement, the Missouri Supreme Court entered a writ of prohibition against Judge Eighmy, ordering him to vacate all orders entered after August 5, 2020, and further ordering a senior circuit judge to preside over Rockett's motion to disqualify Judge Eighmy for cause.[4] App. 30; R. Doc. 1, at 24; App. 44-45; R. Doc. 1-4, at 1-2.

Rockett retained local counsel in Union Parish, who provided a copy of the Missouri Supreme Court writ to a Louisiana judge. App. 30; R. Doc. 1, at 24. Two days later, the Louisiana judge ordered the children released into Rockett's custody. App. 31; R. Doc. 1, at 25. Several months later, on April 29, 2021, the Union Parish court entered an order determining that it had UCCJEA jurisdiction based on Rockett and the children's residency on the family farm. *Id.*; App. 188-90; R. Doc. 1-5 at 1-3. That Court further held that Judge Eighmy had declined jurisdiction on January 4, 2021. *Id.* On May 3, 2021, the mother filed a dismissal of her Missouri case, which Judge Eighmy signed the next day. App. 31; R. Doc. 1, at 25; App. 46; R. Doc. 1, at 1-6.

---

[4] This was the second time in 18 months that the Missouri Supreme Court had entered a writ of prohibition against Judge Eighmy, an extraordinary remedy, for failing to make reasonable efforts to follow procedure. *Compare State ex. re. Rockett v. Eighmy,* No. SC98716 (Mo. banc Nov. 19, 2020) *with State ex. rel. Jones v. Eighmy,* No. SC97417 (Mo. banc Apr. 30, 2019). To paraphrase Lady Bracknell, to lose one writ may be regarded as a misfortune; to lose both looks like carelessness. Oscar Wilde, *The Importance of Being Earnest* (1895). (Of course, Rockett is alleging malicious and reckless conduct here by Judge Eighmy, not mere carelessness.)

Appellate Case: 21-3903    Page: 26    Date Filed: 04/11/2022 Entry ID: 5146117

## V. Procedural background of this civil rights case

Rockett, as next friend of his children, filed his Complaint against Judge Eighmy under 42 U.S.C. § 1983 in the Western District of Missouri. The pleading claims damages from Judge Eighmy for unreasonable seizure under the Fourth Amendment as to each jailing; for retaliation for the children's exercise of their First Amendment rights; and for physical and bodily abuse in violation of the Due Process Clause of the Fourteenth Amendment. App. 36-40; R. Doc. 1, at 30-34.

The pleading alleges that Judge Eighmy lacks judicial immunity because his first, personal seizure in Taney County was functionally not a judicial act. App. 33-35; R. Doc. 1, at 27-29. The pleading further alleges that Judge Eighmy's Pick Up Order was made in the clear absence of jurisdiction as to the children. App. 35; R. Doc. 1, at 29.

Judge Eighmy moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting judicial immunity. App. 49; R. Doc. 14, at 1. He did not, however, allege that Rockett had failed to state a claim for his children's four causes of action. *Id.* The district court denied Judge Eighmy's motion. App. 183; R. Doc. 30, at 4. Judge Eighmy's interlocutory appeal timely followed.

14

## Summary of Argument

The district court correctly held that this case involves a "very" or "extremely" unique set of allegations as to a state judge's misconduct that "was not judicial in function and lacked jurisdiction." Add. 1, 2, 3. Judge Eighmy does not point to any case law on all fours showing immunity for his conduct. This Court can affirm on narrow grounds without disturbing or extending precedent.

Judge Eighmy argues at least nine different ways that he was functioning as a judge with jurisdiction, focusing on his motives as to *why* he acted as he did, and his authority to coerce compliance. App. Br. 18.

The touchstone of judicial immunity, however, is the nature of the function, not the act itself or the subjective intent of the actor. When he personally seized and jailed the children, and threatened to put them in foster care, Judge Eighmy functioned not like a judge, but rather like a police officer or a prosecutor. Judges do not normally perform the act of personally seizing children and jailing them outside of court proceedings, without any record, order, or judgment, even in the exercise of their contempt powers.

Judge Eighmy later issued a Pick Up Order as to the children, acting in the clear absence of jurisdiction. There was no proceeding before him that warranted that judicial sanction. This was not a criminal or delinquency matter, and there was no petition or motion before him to pick up the children. What was pending

Appellate Case: 21-3903    Page: 28    Date Filed: 04/11/2022 Entry ID: 5146117

before him was the mother's custody modification case.  But Judge Eighmy lacked

UCCJEA subject matter jurisdiction and personal jurisdiction over the

modification case.  The day after the children were picked up and confined, the

Missouri Supreme Court entered a writ of prohibition removing Judge Eighmy

from the case and vacating his orders.

## Standard of Review

This Court reviews *de novo* the denial of a motion to dismiss based on immunity. *Hager v. Ark. Dep't of Health,* 735 F.3d 1009, 1013 (8th Cir. 2013). "Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Hager,* 735 F.3d at 1013 (citing *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999)).

Appellate Case: 21-3903     Page: 30     Date Filed: 04/11/2022 Entry ID: 5146117

## Argument

A judge is generally immune at common law from a suit for money damages. *See, e.g., Mireles,* 502 U.S. at 10; *Forrester v. White,* 484 U.S. 219 (1988); *Supreme Court of Va. v. Consumers Union of United States, Inc.,* 446 U.S. 719 (1980); *Butz v. Economou,* 438 U.S. 478 (1978); *Stump v. Sparkman,* 435 U.S. 349 (1978); *Pierson v. Ray,* 386 U.S. 547 (1967), relying on *Bradley,* 80 U.S. at 347.

This Court has applied the Supreme Court's judicial immunity doctrine. *See, e.g., Hamilton v. City of Hayti,* 948 F.3d 921, 925 (8th Cir. 2020); *Justice Network Inc. v. Craighead Cnty.,* 931 F.3d 753, 760 (8th Cir. 2019); *Schottel v. Young,* 687 F.3d 370, 373 (8th Cir. 2012); *Brown v. Griesenauer,* 970 F.2 921, 925 (8th Cir. 1992).

The Supreme Court allows an official's absolute immunity to extend no further than necessary to protect the integrity of a decision-making process. "Running through our cases, with fair consistency, is a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment. Under that approach, we examine the nature of the functions with which a particular official or class of officials has [*sic*] been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions."

Appellate Case: 21-3903     Page: 31     Date Filed: 04/11/2022 Entry ID: 5146117

*Forrester,* 484 U.S. at 224; *Harlow,* 457 U.S. at 810 (protection of absolute immunity "has extended no further than its justification would warrant"). Absolute immunity should only attach to the extent functional necessity demands that it must attach.

There are two sets of circumstances where judicial immunity is overcome in a civil action for money damages.

First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. *Mireles,* 502 U.S. at 11-12, relying on *Forrester,* 484 U.S. at 227-229; *Stump,* 435 U.S. at 360. Whether an act by a judge is a "judicial" one relates to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity. *Stump,* 435 U.S. 349, 362 (1978); *Mireles,* 502 U.S. at 11-12; *see also Schottel,* 687 F.3d at 373, citing *Birch v. Mazander,* 678 F.2d 754, 756 (8th Cir. 1982).

Second, a judge is not immune for actions, though judicial in nature, which are taken in the clear absence of jurisdiction. *Stump,* at 356-357; *Bradley,* 80 U.S. at 351. "[A]n action—taken in the very aid of the judge's jurisdiction over a matter before him—cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13. The distinction is whether the judge acted in the "complete absence of all jurisdiction over the subject matter" as opposed to a

mere "excess of jurisdiction." *Bradley,* 80 U.S. at 351-52. The Fourth Circuit has posed the question as: "When a judge exceeds authority, was he or she entirely devoid of power or was a power lawfully possessed wrongly exercised?" *King v. Myers,* 973 F.2d 354, 357 (4th Cir. 1992).

I.    **Personally seizing and jailing children outside of a judicial proceeding is not a judicial function, and so Judge Eighmy lacks judicial immunity for his extreme and rare misconduct.**

There is no court record of Judge Eighmy's first, personal seizure of the children, and there was no judicial proceeding beforehand or afterward connected to the seizure. The Court can take judicial notice of the contents of state court files. *See Greenman v. Jessen,* 787 F.3d 882, 887 (8th Cir. 2015). In Missouri, state court records are public records. *Levy v. Ohl,* 477 F.3d 988 (8th Cir. 2007) (district court may take judicial notice of public state records).

a.    **Judge Eighmy did not function as a judge in taking the children to jail**

i.    **The analysis is functional, not motivational**

Judge Eighmy concedes that he was "personally taking the children to jail" when he seized the children in the courthouse after court had ended session and was done for the day. App. Br. 17-18. Faced with that concession, he then asks this Court to look not to his functional act, but rather to his motivation, or "why he

Appellate Case: 21-3903    Page: 33    Date Filed: 04/11/2022 Entry ID: 5146117

did so." *Id.* at 18.  But the Supreme Court has held that the relevant inquiry is whether it is a function normally performed by the judge.  *Stump,* 435 U.S. at 362; *Mireles,* 502 U.S. at 13.   There was no judicial nature or function as to Judge Eighmy's actions, they are not acts normally performed by judges, and he cites to no case on point.

In a somewhat similar case, the Fifth Circuit denied a judge immunity for almost all of his acts when he privately sent an officer to a motorist's home and ordered him to appear in the judge's courtroom for an *ex parte* proceeding the morning after the motorist had honked at the judge during his evening commute. *Malina v. Gonzales,* 994 F.2d 1121, 1124 (5th Cir. 1993).  The judge then prosecuted and adjudicated a contempt proceeding against the motorist, sentencing him to five hours in jail.  The Fifth Circuit held that:

> Peace officers, not judges, stop motorists on the highway, and prosecutors, not judges, set the judicial machinery in motion by charging someone with a crime. It is well settled that charging a defendant is a prosecutorial function, not a judicial function. Additionally, Judge Gonzales' private use of an officer to unofficially summon Malina is not a judicial act, and is not closely related to a general judicial function. Consequently, Judge Gonzales can claim judicial immunity for neither the stop, the summons, nor the charging.
>
> *Id.*, citing *Lopez v. Vanderwater,* 620 F.2d 1229, 1235 (7th Cir. 1980), *cert. denied,* 449 U.S. 1028 (1980).

The only acts for which Judge Gonzalez was found to be judicially immune were issuing a written contempt citation and sentencing the motorist to five hours

detention. Here, in contrast, Judge Eighmy issued no contempt citation or sentence.

Judge Eighmy used his authority as a judge to force the children to follow him. A reasonable person in the children's position would not have felt free to disregard him and go about his business. *Cf. United States v. Perdoma,* 621 F.3d 745, 749 (8th Cir. 2010). Functioning like a police officer, Judge Eighmy "ma[d]e a seizure by a show of authority and without the use of force." *Brendlin v. California,* 551 U.S. 249, 254 (2007).

### ii. Personally seizing children is not a judicial function

A personal seizure by a judge is functionally not an act of a judicial nature. *Gregory v. Thompson,* 500 F.2d 59, 64 (9th Cir. 1974) (no judicial immunity for courtroom physical assault); *Newman v. Indiana,* 129 F.3d 937, 941 (7th Cir. 1997) (no judicial immunity for hitting litigant with a hammer); *Ammos v. Baldwin,* 705 F.2d 1445, 1446-48 (5th Cir. 1983) (no judicial immunity for threatening to physically harm a litigant). Other functionally non-normative conduct lacks judicial immunity. *See, e.g., Archie v. Lanier,* 95 F.3d 438 (6th Cir. 1996) (no judicial immunity for stalking and sexually assaulting a litigant); *Lynch v. Johnson,* 420 F.2d 818, 820-21 (6th Cir. 1970) (judge not protected by judicial immunity for jailing a fellow board member when judge was acting in a legislative capacity); *Dawn v. Ciavarella,* No. 3:10-CV-0797, 2010 WL 3122858 (M.D. Pa. Aug. 9,

2010) (no immunity for "vast majority" of acts by two Pennsylvania judges who received kickbacks for diverting juveniles into a privately-owned detention facility). Judge Eighmy's conduct was more like that of a New York judge who ordered a courthouse coffee vendor "unlawfully dragoon[ed]" into custody "before a star chamber proceeding" or "pseudo-official inquisition" because he did not like the taste of his coffee. *Zarcone v. Perry,* 572 F.2d 52, 53, 55 (2d Cir. 1978). The Second Circuit affirmed a punitive damages verdict against the judge, and did not immunize him for his "abuse of official power." *Id.* at 57.

### iii. There is a functional difference between performing a seizure and ordering a seizure

It also matters that Judge Eighmy himself performed the seizure, because the Supreme Court, this Court, and at least one other circuit court have noted the functional distinction between a judge issuing a court order and personal conduct by a judge. *Compare Mireles,* 502 U.S. at 10, 13 and *Martin,* 127 F.3d at 721-22, 723-24 (each granting immunity for a judicial order) with *Gregory,* 500 F.2d at 64-65 (denying immunity for a judge's personal use of force).

In *Mireles,* the judge ordered officers "to forcibly and with excessive force seize and bring [a public defender] into his courtroom," and the officers then violently seized the lawyer, called him "vulgar and offensive names," and then "without necessity, slammed" him through the doors and swinging gates into Judge

Appellate Case: 21-3903     Page: 36     Date Filed: 04/11/2022 Entry ID: 5146117

Mireles' courtroom. 502 U.S. at 10. Although Judge Mireles ordered the seizure with excessive force, the Court found the issuance of a court order to be in the nature of a judicial function. *Mireles,* 502 U.S. at 12-13. Judge Mireles had immunity.

In *Martin,* the judge ordered a bailiff to "put the cuffs on" a mother who disrupted a courtroom proceeding with her repeated attempts to contact the judge about her son's traffic charge. 127 F.3d at 721. The bailiff then used excessive force in seizing the mother. (There was no allegation in *Martin* that the judge ordered the use of excessive force, but the act itself is not relevant, *Mireles,* 502 U.S. at 12-13, but rather the nature or function of the act is.) In *Martin,* the judge was not a defendant, but the bailiff had quasi-judicial immunity because his actions were "specifically ordered by the trial judge and related to the judicial function." 127 F.3d at 721.

In contrast, in *Gregory,* a judge personally forced a courtroom observer out the door, threw him to the floor in the process, jumped on him, and began to beat him. 500 F.3d at 61. The Ninth Circuit held that the judge lacked absolute immunity because he performed an act similar to that normally performed by a sheriff or bailiff. *Id.* at 65; *see also Martin,* 127 F.3d at 723 (Lay, J., dissenting) ("[I]t is not the nature of the judicial function that a judge leave the bench and engage [*sic*] a disruptive witness, party, or lawyer by physical force to achieve his

Appellate Case: 21-3903    Page: 37    Date Filed: 04/11/2022 Entry ID: 5146117

or her order.").  If, however, the judge had held a proceeding and issued an order from the bench, then he would have absolute immunity because holding a proceeding and issuing an order are judicial functions.  500 F.3d at 64-65.

Judge Eighmy argues that Rockett merely claims that there was not enough judicial process as to the jailing of the children.  App. Br. 32.  That is not all that Rockett claims, as reflected in this brief and the record below, but it is certainly true and cuts in Rockett's favor.  Judge Eighmy did not hold any proceedings, or issue any order.  Instead he went rogue, and personally effected a seizure.

**b.**    **The seizure and jailing were not pursuant to a contempt proceeding, finding, or order**

**i.  Judge Eighmy was not conducting a contempt hearing**

Judge Eighmy argues that his actions "relat[ed] to a general function normally performed by a judge," namely the contempt power.  App. Br. 18; *Mireles,* 502 U.S. at 12.  Judge Eighmy characterizes his acts as a normal judicial function in "[o]rdering the detention of children who refuse to comply with a custody order."  App. Br. 17.   He further analogizes his personal seizure to a contempt hearing and finding.  *Id.* at 18-19.  But there was no hearing or finding. There is nothing about Judge Eighmy's actions that resembles what judges normally or functionally do in adjudicating contempt under Missouri law.  Judge Eighmy's conduct violated the Missouri Code of Judicial Conduct, which is why,

as discussed *infra* in Section II(d), the Missouri Supreme Court later issued a writ of prohibition and vacated his orders.

In Missouri courts, contempt falls into four categories: civil and criminal, direct and indirect. *State ex Rel. Burrell-El v. Autrey,* 752 S.W.2d 895, 897-98 (Mo. Ct. App. 1988).

### ii. There was no civil contempt proceeding

Missouri courts have emphasized in the child custody context that contempt is directed to parents, with the complaining parent able to grant relief to his or her adversary. *See, e.g., Schutter v. Seibold,* 632 S.W.3d 820, 833 (Mo. Ct. App. 2021). Children cannot be held in contempt in a Missouri dissolution case. *De Rubio v. Herrera,* 541 S.W.3d 564, 574 (Mo. Ct. App. 2017) ("In a dissolution case, the child is not a party, the court does not exercise jurisdiction directly over the child, but over the parents of the child, and the child is not subject to sanction for non-compliance with any judgment."). Since the children were not before Judge Eighmy as parties, then they could not be in civil contempt. *Sophian Plaza Ass'n v. City of Kansas City,* 584 S.W.3d 784, 788 (Mo. 2019). Despite Judge Eighmy's contention otherwise, App. Br. 19, no court has ever held that the UCCJEA generally, and its provision at RSMo. 452.400.3 specifically, authorizes incarcerating children as a remedy for parental noncompliance with a custody determination. *Id.* Further, the UCCJEA makes clear that children are not litigants

in custody cases. RSMo. 452.705(12); *cf.* Missouri Rule 110.04(a)(20) (juveniles are parties in juvenile proceedings).

Judge Eighmy also ignores that civil contempt normally requires a new action or motion to enforce a judgment. *State ex rel. Cullen v. Harrell*, 567 S.W.3d 633, 642 (Mo. 2019). Although there was a settlement, there was not yet any judgment to enforce. Rather, Judge Eighmy had directed the mother's counsel to draft a judgment by October 31st. App. 17; R. Doc. 1, at 11. A civil contempt action allows a *party* to request that the court require a disobedient opposing party to comply with a court judgment or to enforce a rule that has been violated. 2A Mo. Prac., Methods of Prac.: Litigation Guide sec. 37.4 (4th ed.). A verified motion for contempt is subject to the requirements of RSMo. 452.310.1; *Odom v. Langston*, 358 Mo. 241, 213 S.W.2d 948, 951 (Mo. banc 1948). Even in cases where third parties were confined for contempt and a judge's immunity was affirmed, there was a judicial proceeding and an order holding the plaintiff in contempt. *McAlester v. Brown,* 469 F.2d 1280, 1282 (1972), citing *Stump,* 435 U.S. at 361. None of that happened here, so Judge Eighmy's conduct was nothing functionally like hearing a civil contempt motion or entering an order against a party.

Both Missouri and California courts have long recognized that parents may have trouble trying to force teenage and even preteen children to do things that

Appellate Case: 21-3903    Page: 40    Date Filed: 04/11/2022 Entry ID: 5146117

they do not wish to do in the context of disputed custody arrangements. *See, e.g.,*
*D.R.P. v. M.P.P.,* 484 S.W.3d 822, 829 (Mo. App. 2016), citing *Shanks v. Shanks,*
603 S.W.2d 46, 48 (Mo. App. 1980); *compare Coursey v. Superior Ct.,* 194 Cal.
App. 3d 147, 154–56, 239 Cal. Rptr. 365, 369–70 (1987).  We have been unable to
find cases from any court approving the seizure and jailing of children for civil
contempt to compel their acquiescence in custody disputes between their parents.

### iii.  There was no criminal contempt proceeding

Second, Judge Eighmy cannot colorably argue in the alternative that he was
punishing a criminal contempt.  A direct criminal contempt is one that occurs in
the view and presence of the court or so nearby as to *interrupt the proceedings*.
*State ex Rel. Chassaing v. Mummert,* 887 S.W.2d 573, 577 (Mo. 1994) (emphasis
added).  An indirect criminal contempt is an act outside the court tending to
degrade or make impotent the authority of the court or to impede or embarrass the
administration of justice.  *Curtis v. Tozer,* 374 S.W.2d 557, 568 (Mo. Ct. App.
1964).  In direct contempt cases the court is entitled to act summarily, while in
cases of indirect contempt the alleged contemnor is entitled to procedural rights of
notice and hearing.  *McMilian v. Rennau,* 619 S.W.2d 848, 850–51 (Mo. Ct. App.
1981).

If the children had directly disturbed a judicial proceeding, this would be a
different case.  Instead, the children made a First Amendment-protected, out-of-

Appellate Case: 21-3903     Page: 41     Date Filed: 04/11/2022 Entry ID: 5146117

court statement to Judge Eighmy after *he approached them* in the lobby, after judicial proceedings had ended.  App. 18; R. Doc. 1, at 12.  Judge Eighmy's actions were not functionally akin to a direct criminal contempt hearing or a finding of contempt.  *Cf. Martin,* 127 F.3d at 721.  Similarly, out of court statements are not indirect criminal contempt unless they imminently threaten the administration of justice.  *Cf.* RSMo. 476.110; *Craig v. Harney,* 331 U.S. 367, 376 (1947).  Statements about pending cases by non-lawyers are protected by the First Amendment under a "clear and present danger of a substantive evil" standard.  *Smith v. Pace,* 313 S.W.3d 124, 134 (Mo. banc 2010).  The children's statements do not remotely meet that high burden.

Judge Eighmy's citations to generic cases in which a party was properly held in contempt after another party filed a contempt motion and the court conducted a hearing are thus inapposite.  *See, e.g., Jakes, Ltd. v. City of Coates,* 356 F.3d 896, 901 (8th Cir. 2004) (reversing criminal contempt sanction for failure to follow procedural protections); *Liles v. Regan,* 804 F.2d 493, 495 (8th Cir. 1986).  In short, Judge Eighmy's personal conduct was obviously not in the nature or function of holding a criminal contempt proceeding.

Third, Judge Eighmy cites to various Missouri statutes and cases that go to his generic contempt power as a judge.  But those do not provide his conduct with the judicial nature and function that he asserts.  Judge Eighmy cites to *Harrell,* 567

Appellate Case: 21-3903     Page: 42     Date Filed: 04/11/2022 Entry ID: 5146117

S.W.3d at 639 and *Schutter,* 632 S.W.3d at 832 (Mo. Ct. App. 2021). The former concerns a motion to compel against a husband who did not sign paperwork in a divorce necessary to effectuate its judgment. The latter addressed a family access motion by a father against a mother where the mother interfered with the father's custody or access without good cause. Both involve judicial proceedings and a resulting judgment or order. Neither is apposite here.

### iv. There was no child welfare or juvenile proceeding

Fourth, Judge Eighmy argues that he was acting for the benefit of the children. Although the UCCJEA permits child welfare orders, that is where a parent (or a third party) files a motion asserting that the child will suffer a serious imminent physical harm or removal from this state. RSMo. 452.885. The harm issue was never before Judge Eighmy related to any judicial process, and as to removal Judge Eighmy himself had earlier encouraged *the mother* to take the children from Missouri to Utah and register a judgment there.

Fifth, Judge Eighmy implies that he found that the children lacked proper care, custody, or support under RSMo. 211.131 and issued a juvenile order under RSMo. 211.401.1. But this was not a juvenile division case, no such petition was before him, and Judge Eighmy did not have access to the resources of the juvenile court in sitting as a juvenile judge. *See De Rubio,* 541 S.W.3d at 574, n. 10

Appellate Case: 21-3903    Page: 43    Date Filed: 04/11/2022 Entry ID: 5146117

(differentiating divorce court and juvenile court functions, resources, and jurisdiction).

Sixth, Judge Eighmy argues that Rockett's claims merely get to the informality and lack of rectitude of his conduct. App. Br. 22, 24; *compare Stump,* 435 U.S. at 362-63. But Judge Eighmy's liability for his seizure is based on a functional analysis.[5] There was nothing judicial in function as to Judge Eighmy's conduct. It was "beyond the pale of anything that could sensibly be called a judicial act." *Stump,* 435 U.S. at 365 (Stewart, J., dissenting).

### c. The seizure did not arise directly and immediately out of the children approaching Judge Eighmy for judicial relief

The Fifth Circuit has a four-factor test that, when taken together, lead to the conclusion that a judge is acting in his judicial jurisdiction: "(1) the precise act complained of, use of the contempt power, is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose

---

[5] Judge Eighmy's previous representation of the children's grandmother in her divorce, then functionally adverse to Rockett; his threats to put the children into foster care despite no case or controversy then pending before him where that would be a conceivable remedy; and his unusual advocacy in the mother's interest by advising her to register the judgment in the Utah courts, all combine to suggest serious conflicts of interest, *ab initio* due process flaws, and "grave procedural errors," *Stump,* 435 U.S. at 359; *Bradley,* 80 U.S. 357.

directly and immediately out of a visit to the judge in his official capacity."
*McAlester,* 469 F.2d at 1282. Only the third factor is potentially present here.
The Supreme Court distinguishes between judicial acts and other functions that
judges may on occasion be assigned by law to perform. *Forrester,* 482 U.S. at
227.

Judge Eighmy heard the parents' custody settlement, and he instructed the
mother's attorney to draft a judgment. But there was no petition or motion pending
before him when he approached the children in the courthouse lobby after hours.
*Cf. Stump,* 435 U.S. at 362; *McAlester,* 469 F.2d at 1282. While he did have a
personal and professional falling out with the children's grandmother, *cf.*
*Woodworth v. Hulshof,* 891 F.3d 1083, 1092 (8th Cir. 2018), nevertheless he was
not conducting a judicial proceeding or issuing a court order. Judicial immunity
requires that judges possess the authority to perform actions *relating to a matter*
*before them. Mireles,* 502 U.S. at 13 (emphasis added). Here, there was nothing
before Judge Eighmy. *Cf. Stump,* 435 U.S. at 351-52 (judicial order related to
sterilization petition that was before state court judge); *Rogers v. Gaston,* No. 6:19-
03346-CV-RK, 2020 WL 1694796 at * 8 (W.D. Mo. Apr. 7, 2020) (judicial order

related to custody proceeding before the state court judge); *cf. Malina*, 994 F.3d at 1128 (no contempt case pending before judge).

The seizure did not arise out of the children approaching Judge Eighmy for judicial relief; indeed, the children did not approach the judge at all. Rather, *the judge approached the children* outside of a judicial proceeding and acted like a police officer, or perhaps a prosecutor. *See Lopez*, 620 F.2d at 1236 (denying judicial immunity for a judge prosecuting trespass). The boy K.R.'s statement to Judge Eighmy—"I don't know how *you* have a right to lock us up. We have done nothing wrong" (emphasis added)—indicates that he understood that the judge was functioning as a jailer.

## II.     Judge Eighmy issued his Pick Up Order in the clear absence of jurisdiction, not in excess of jurisdiction

Months later in August 2020, with no petition or motion before him as to the children, Judge Eighmy issued a Pick Up Order for the children, by then residents at their family farm in Louisiana during the Covid-19 quarantine. He did so in the clear absence of jurisdiction. *Stump*, 687 U.S. at 356.

### a.   The UCCJEA statute and case law are jurisdictional and circumscribe Judge Eighmy's authority to issue the Pick Up Order

For the purposes of immunity analysis, subject matter jurisdiction is given a broad construction. *Stump*, 435 U.S. at 356-57. But there are doctrinal limits, and

absolute immunity extends no further than its justification would warrant. *Forrester,* 484 U.S. at 224; *Harlow,* 457 U.S. at 810. In states such as Missouri where associate circuit judges have general jurisdiction, the *Bradley* hypothetical example of a probate judge presiding over a criminal case is impossible. 80 U.S. at 352.

Missouri courts recognize two kinds of jurisdiction: subject matter and personal, each based upon constitutional principles. Personal jurisdiction is, for the most part, a matter of federal constitutional law under the Due Process Clause of the Fourteenth Amendment. *J.C.W. v. Wyciskalla,* 275 S.W.3d 249, 252 (Mo. 2009).

Subject matter jurisdiction concerns "the classes of cases . . . falling within a court's adjudicatory authority." *Kontrick v. Ryan,* 540 U.S. 443, 455 (2004). Subject matter jurisdiction concerns only the "power to adjudicate" a case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998). Subject matter jurisdiction is governed by article V of the Missouri Constitution. *Wyciskalla,* 275 S.W.3d at 252, citing *In re Marriage of Hendrix,* 183 S.W.3d 582 (Mo. banc 2006). Missouri associate circuit judges may hear and determine all cases, civil or criminal and all other matters as now provided by law for magistrate or probate judges and may be assigned such additional cases or classes of cases as may be provided by law. Mo. Const. Art. V, § 17; RSMo 478.220. Missouri courts have

Appellate Case: 21-3903    Page: 47    Date Filed: 04/11/2022 Entry ID: 5146117

replaced the word "jurisdiction" with "authority" where courts have used the term "jurisdiction" in cases that "do not question the court's subject matter or personal jurisdiction and really go to the court's authority to render a particular judgment in a particular case." *Wyciskalla,* 275 S.W.3d at 254.

Supreme Court precedent holds that a judge lacks immunity for an order issued in the clear absence of jurisdiction. *Mireles,* 502 U.S. at 13, citing *Bradley,* 80 U.S. at 351; *Stump,* 435 U.S. at 358. For a court of general jurisdiction, the jurisdictional grant is "indeed … broad." *Id.* Judge Eighmy argues that in light of the Missouri Constitution's provision of general subject matter jurisdiction to his office, then he is immune and no further analysis in required. App. Br. 31-32.

He ignores that the Supreme Court in *Stump* held—in reviewing subject matter jurisdiction—that it was "[m]ore significant that there was no [state] statute and no case law … prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented." 435 U.S. at 358. For example, while Judge Eighmy has general subject matter jurisdiction like the Indiana judge who heard the sterilization petition in *Stump*, the Missouri Supreme Court has explicitly prohibited Missouri courts from considering a petition for sterilization. *In Interest of M. K. R,* 515 S.W.2d 467, 470-71 (Mo. 1974) ("Jurisdiction of the juvenile court to exercise the awesome power of [sterilization] may not be inferred … [s]uch

Appellate Case: 21-3903    Page: 48    Date Filed: 04/11/2022 Entry ID: 5146117

jurisdiction may be conferred only by specific statute.")  Thus, there are limits to general subject matter jurisdiction.

This Court has cited approvingly to a case where a general jurisdiction judge was found to have acted in the clear absence of jurisdiction because the judge lacked statutory authority.  *See Duba v. McIntyre,* 501 F.2d 590, 592 (8th Cir. 1974), *citing Wade v. Bethesda Hospital,* 337 F.Supp. 671, 673-74 (S.D. Ohio 1971) (judge acted in clear absence of jurisdiction for ordering sterilization without statutory authority).

The UCCJEA is a jurisdictional statute.  Among its objectives is the avoidance of jurisdictional competition and conflict.  *Ketteman v. Ketteman,* 347 S.W.3d 647 at n.3 (Mo. Ct. App. W.D. 2011).  The UCCJEA limits the jurisdiction or authority of Missouri circuit courts to hear certain types of custody modification petitions, unlike the Indiana judge in *Stump*.  *Compare id.* at 358 *with Ketteman,* 347 S.W.3d at 653 (discussing UCCJEA subject matter jurisdiction).  The drafters of the UCCJEA intended for its statutory jurisdiction to be subject matter jurisdiction.  *See* UCCJEA § 201, cmt., 9-IA U.L.A. 673 (1999) (noting that "jurisdiction to make a child custody determination is subject matter jurisdiction").  So did Congress.  *See* 28 U.S.C. § 1738A.

In Missouri, the UCCJEA provides "the exclusive jurisdictional basis for making a child custody determination by a court of this state."  RSMo. 452.740.2

Appellate Case: 21-3903    Page: 49    Date Filed: 04/11/2022 Entry ID: 5146117

and .745; *In re Interest of Arnold,* 532 S.W.3d 712, 717 (Mo. Ct. App. 2017);

*Ketteman,* 347 S.W.3d at 653 ("[T]he provisions of the [UCCJEA] must be met for

Missouri courts to have *subject matter jurisdiction* over a child custody

proceeding.") (emphasis added).  The UCCJEA prioritizes the question of

jurisdiction.  RSMo. 452.845.  Missouri courts "should make an initial

determination of their statutory authority to proceed under the [UCCJEA] by

*express findings* before proceeding to the substantive issue of custody."  *Ketteman,*

347 S.W.3d at 655 (emphasis added).  "The circuit court's statutory or common

law authority to grant relief in a particular case differs from the circuit court's

constitutionally granted subject matter and personal jurisdiction.  In this respect,

the [UCCJEA] jurisdiction provisions inform a court whether it *lacks authority* to

modify custody because of the statutory limitations."  *Hightower v. Myers,* 304

S.W.3d 727, 733 (Mo. 2010) (emphasis added).

   Unlike the statute analyzed in *Wyciskalla,* the UCCJEA also incorporates

principles of personal jurisdiction and comity as seeming factors in its

jurisdictional provisions.  *Id.* at 733-34.  The Missouri Supreme Court has further

observed that "the concept of jurisdiction as applied to the [UCCJEA] has

confused and confounded both courts and scholars," but declined to undertake further analysis of this issue. *Id.* at 734.[6]

The UCCJEA provides that Missouri courts shall not exercise jurisdiction "if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child had been previously commenced in a court of another state having jurisdiction" in conformity with the UCCJEA, "unless the proceeding has been terminated." RSMo. 452.765.1. That was also not the case here, in that the children had resided in California for nine years with their father, and the mother's California custody case was still pending. *Burgett v. Thomas,* 509 S.W.3d 840, 844 (Mo. Ct. App. 2017).

The Missouri Supreme Court has construed the home state provisions of the UCCJEA to proscribe the impractical result of bifurcation or transfer of a custody case midway through litigation. That is because the intent of the UCCJEA is to avoid jurisdictional competition and conflict. *Blanchette,* 476 S.W.3d at 280, citing *Al–Hawarey v. Al–Hawarey,* 388 S.W.3d 237, 245 (Mo. App. 2012).

This analysis is in accord with other statutory limitations on jurisdiction. In construing Missouri's long-arm jurisdiction statute, the Missouri Court of Appeals has held, in a post-*Wyciskalla* opinion, that "the legislature most likely did not

---

[6] The *Hightower* Court reviewed both the UCCJEA and a predecessor statute, the UCCJA, citing Barbara Ann Atwood, *Child Custody Jurisdiction and Territoriality,* 52 Ohio St. L.J. 369 (1991).

Appellate Case: 21-3903    Page: 51    Date Filed: 04/11/2022 Entry ID: 5146117

intend 'to confer jurisdiction in all cases that the constitution would permit, but that the specific *categories* of cases over which the legislature did extend jurisdiction should be construed to include all the cases those categories rationally could be understood to include to the extent that due process would permit.'" *Noble v. Shawnee Gun Shop, Inc.,* 316 S.W.3d 364, 370 (Mo. Ct. App. 2010) (emphasis in original), citing 1 Robert C. Casad & William B. Richman, Jurisdiction in Civil Actions § 4-l[l][b] (3d ed. 2004). "A contrary interpretation would effectively ignore the language of the [] statute." *Id.*

Here, Judge Eighmy's assumption of UCCJEA jurisdiction or authority away from the California court hearing the mother's original modification case was made in the clear absence of jurisdiction and authority. *Compare* RSMo. 452.745, .750, .800, and .865. His record as to his alleged conversation with Judge Wayser in Los Angeles failed to establish he had jurisdiction.[7] RSMo. 452.730. "It follows that a ruling of the court's authority that is merely conclusory or a ruling that just assumes that the court has authority, but is tacit as to the factual basis for

---

[7] A statute such as the UCCJEA that conditions access to the courts may implicate Fourteenth Amendment due process principles. *Wyciskalla,* 275 S.W.3d at 255. Courts have not addressed head-on whether or not the failure to hold an evidentiary hearing on UCCJEA jurisdiction constitutes a Fourteenth Amendment due process violation, but have suggested that given the integrity of the family unit, that the Due Process Clause may be implicated. *See, e.g., In re Interests of A.A.-F.,* 444 P.3d 938, 955 (Kan. 2019); *In re Jaden D.,* D054873 (Cal. Ct. App. Nov. 20, 2009).

Appellate Case: 21-3903    Page: 52    Date Filed: 04/11/2022 Entry ID: 5146117

that adjudication, does not meet the objectives of the [UCCJEA]." *Ketteman,* 347 S.W.3d at 655. Thus, Judge Eighmy lacked UCCJEA subject matter jurisdiction, or authority, to issue the Pick Up Order. *Al–Hawarey,* 388 S.W.3d at 242-44. He certainly did not have jurisdiction to order children picked up in Louisiana.

Subject matter jurisdiction cannot be waived or conferred by consent of the parties. *Hightower,* 304 S.W.3d at 733. It can be raised "at any time by any party or court, even in a collateral or subsequent proceeding." *Id.* To the extent Missouri permits waiver of UCCJEA authority or jurisdiction, Rockett timely preserved his jurisdictional objection. *Schaeffer v. Schaeffer,* 471 S.W.3d 367, 371-72 (Mo. Ct. App. S.D. 2015); *Hightower,* 304 S.W.3d at 733.

Many of the 49 states which have adopted the UCCJEA hold that the statute limits the subject matter jurisdiction of the custody court.[8] "Of the states that have considered the jurisdictional issue, some refer to the UCCJEA as a subject-matter-jurisdiction statute, while others do not. The issue is not settled." *In the Interest of*

---

[8] *See, e.g., H.T. v. Cleburne County Dept. of Human Resources,* 163 So.3d 1054, 1061 (Ala. Civ. App. 2014); *Stauffer v. Temperle,* 794 N.W.2d 317, 321 (Iowa Ct. App. 2010); *Officer v. Blankenship,* 555 S.W.3d 449 (Ky. Ct. App. 2018); *Schroeder v. Schroeder,* 658 N.W.2d 909 (Minn. Ct. App. 2003); *Friedman v. Eighth Judicial Dist. Court of State, ex rel. County of Clark,* 264 P.3d 1161 (Nev. 2011); *In re Guardianship of K.B.,* 233 A.3d 328 (2019); *Gharachorloo v. Akhavan,* 67 A.D.3d 1013, 889 N.Y.S.2d 256 (N.Y. App. Div. 2009); *Harshberger v. Harshberger,* 724 N.W.2d 148 (N.D. 2006); *Rosen v. Celebrezze,* 883 N.E.2d 420 (2008) (per curiam); *Rosen v. Rosen,* 664 S.E.2d 743 (W.Va. 2008); *Harignordoquy v. Barlow,* 313 P.3d 1265 (Wyo. 2013).

Appellate Case: 21-3903    Page: 53    Date Filed: 04/11/2022 Entry ID: 5146117

*D.S.,* 602 S.W.3d 504, 517-518 (Tex. 2020) (footnotes listing cases omitted).

Outside of the context of judicial immunity, the issue is almost never outcome-determinative. *In re J.W.,* 53 Cal.App.5th 347, 365 (Cal. Ct. App. 2020).

It would be an absurd and inconsistent result if judges lacking UCCJEA subject matter jurisdiction had judicial immunity from Section 1983 claims in some states, but not in other states, merely because of how their state supreme court had interpreted the jurisdictional effect of a uniform statute. To be sure, Section 1983 law does look to state law in other contexts, such as whether an official is a policymaker for purposes of *Monell* liability. *Cf. Thompson v. Shock,* 852 F.3d 786, 793 (8th Cir. 2017). But it would defeat the purpose of a uniform subject matter jurisdictional statute if it were to be applied non-uniformly in federal court. *See also* 28 U.S.C. § 1738A.

### b. Judge Eighmy lacked personal jurisdiction

A Missouri court must also have personal jurisdiction. Under the UCCJEA, personal jurisdiction generally attaches at the commencement of a proceeding. *Blanchette,* 476 S.W.3d at 280. Here, that would be in 2013 when the mother filed a modification in California, not in 2018 when she filed a separate case in Missouri. *Id.* The children had not been residents in Missouri for nine years before the custody modification case was commenced by their mother, and were not residents when Judge Eighmy issued his Pick Up Order. The UCCJEA allows

41

a safe harbor for parties to appear without waiving personal jurisdiction. RSMo. 452.725. A timely-raised defense of lack of personal jurisdiction means the Court lacks the power to affect a person's rights or interests. *In re A.R.B.,* 586 S.W.3d 846, 859 (Mo. Ct. App. W.D. 2019). As such Judge Eighmy lacked personal jurisdiction over Rockett and the children under the UCCJEA, RSMo. 452.745, regardless of the 2009 divorce decree or the 2019 settlement, because the personal jurisdiction analysis begins and ends at the time of filing. *See Patel v. Patel,* 380 S.W.3d 625, 631 (Mo. Ct. App. 2012), *overruled on other grounds by Geiler v. Liberty Ins. Corp.,* 621 S.W.3d 536, 544 (Mo. Ct. App. W.D. 2021); *see also Nestle v. Johns,* 452 S.W.3d 753 (Mo. Ct. App. E.D. 2015). In other family law contexts such as spousal support, the Supreme Court has held that lack of personal jurisdiction defeats jurisdiction. *See, e.g., Estin v. Estin,* 334 U.S. 541 (1948); *Vanderbilt v. Vanderbilt,* 354 U.S. 416 (1957).

Circuits are split on whether the lack of personal jurisdiction defeats judicial immunity, but a minority of circuits, including this Court, have suggested that a lack of personal jurisdiction does exactly that. *See, e. g., Duba,* 501 F.2d at 592 ("the judge must have both jurisdiction *over the person* and subject matter if he is to be immune from suit") (emphasis added); *Harley v. Oliver,* 539 F.2d 1143 (8th Cir. 1976); *Ryan v. Scoggin,* 245 F.2d 54, 58 (10th Cir. 1957) (judge is immune for order or judgment when "court has jurisdiction of the subject matter and of the

Appellate Case: 21-3903     Page: 55     Date Filed: 04/11/2022 Entry ID: 5146117

parties"). Admittedly other circuits do not agree. *See, e.g., Stern v. Mascio,* 262 F.3d 600, 607 (6th Cir. 2001); *Dykes v. Hosemann*, 743 F.2d 1488 (11th Cir. 1984); *Rankin v. Howard,* 633 F.2d 844 (9th Cir. 1980), *overruled in part by Ashelman v. Pope,* 793 F.2d 1072, 1077 (9th Cir. 1986); *Holloway v. Walker,* 765 F.2d 517, 522 (5th Cir. 1985); *Green v. Maraio,* 722 F.2d 1013, 1017 (2d Cir. 1983).

The Supreme Court has not addressed personal jurisdiction in its judicial immunity cases because that was not an issue before it. *Bradley* focuses on subject matter jurisdiction, extending "the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of *both subject and person*." 80 U.S. at 352 (emphasis added). In *Stump,* the mother and child undisputedly lived in Indiana; the issue was subject matter jurisdiction over sterilization petitions. In *Mireles,* the public defender plaintiff worked within the Los Angeles courthouse where Judge Mireles ordered him seized.

Nor has this Court had occasion to address specifically the personal jurisdiction requirement. *See, e.g., Schottel,* 687 F.3d 373; *Birch v. Mazander,* 678 F.2d 754 (8th Cir. 1982); *White v. Bloom,* 621 F.2d 276, 279 (8th Cir. 1980); *see also Williams v. Williams,* 532 F.2d 120, 121-22 (8th Cir. 1976); *Wiggins v. Hess,* 531 F.2d 920 (8th Cir. 1976). Judge Eighmy's cases do not consider personal

Appellate Case: 21-3903    Page: 56    Date Filed: 04/11/2022 Entry ID: 5146117

jurisdiction, but rather merely cite to *Mireles*'s requirement of the "complete absence of jurisdiction." The *Hamilton* plaintiff lived in the City of Hayti, was applying for public housing there, and was subject to an arrest warrant from a defendant Hayti municipal judge. 948 F.3d at 928. The *Justice Network* plaintiff provided probation services to the defendant judges pursuant to contract. 931 F.3d at 762. And Schottel was an attorney practicing before the defendant judge he sued. 687 F.3d at 374.

Judge Eighmy argues that *Bradley* requires only subject matter jurisdiction, but that is not clear given the above holdings from this Court and the Tenth Circuit. Further, some of the policy arguments raised by circuits which require only subject matter jurisdiction are distinguishable in the context of the UCCJEA. A determination of jurisdiction or authority under the UCCJEA requires preliminary, threshold application of statutory factors—that is, findings of law—and not a court to personally verify facts firsthand. *Cf. Dykes,* 776 F.2d at 949 (comparing jurisdictional determinations that generally require only statutory interpretation, as opposed to first-hand verification of facts).

It was clear well before Judge Eighmy issued his Pick Up Order that he acted in the absence of personal jurisdiction.

Appellate Case: 21-3903    Page: 57    Date Filed: 04/11/2022 Entry ID: 5146117

### c. Judge Eighmy issued the Pick Up Order in his enforcement capacity for a delinquency case or issue that was not before him

There is another distinction from the Indiana judge in *Stump,* before whom a petition for sterilization was pending. 435 U.S. at 358. Here, there was no motion or petition pending in the case or issues before Judge Eighmy that warranted a Pick Up Order for the children. Further, he issued the order on his own initiative and in an enforcement capacity.

First, Pick Up Orders are authorized by Missouri law only as to delinquency cases. RSMo. 211.121; *see also* Missouri Law Enforcement Juvenile Justice Guidelines and Recommended Practices (Feb. 2019) at 26, at https://dps.mo.gov/dir/programs/jj/documents/mija-law-enforcement-guidelines.pdf ("The order by the court to take a juvenile into custody may be in the form of a "capias", "pick-up order", "juvenile warrant", or other written order by the court."). Here, Judge Eighmy was not sitting as a juvenile court judge hearing a delinquency case. Even if he was, Missouri is unique among states in that the enforcement aspects of juvenile law are retained by the circuit courts, and not the executive branch. *See* generally RSMo. Chapter 211, *et seq.* In Missouri, juvenile officers are court officers. RSMo. 211.351. That means the judicial branch enforces its own delinquency orders.

This Court has recognized as much in denying judicial immunity to juvenile officers in the enforcement context of invalid orders. *Heartland Academy Community Church v. Waddle,* 427 F.3d 525, 531 (8th Cir. 2005), relying on *Supreme Court of Va.,* 446 U.S. at 736 (no judicial immunity for judges acting in their enforcement capacities).[9]

With no delinquency issue or case before Judge Eighmy, any Pick Up Order would not relate to any matter before him. *See Mireles,* 502 U.S. at 13; *Stump,* 435 U.S. at 351; *Malina,* 994 F.3d at 1128; *see also McAlester,* 469 F.2d at 1282 (lack of third factor). Judge Eighmy may have general jurisdiction; that does not mean he has jurisdiction to impose juvenile delinquency penalties in hearing a custody case with no delinquency matter before him, any more than he could impose probate remedies in hearing a criminal case. *Cf. Bradley,* 80 U.S. at 351. This was not an excess of jurisdiction, because it was not a mere unauthorized exercise of his general power with respect to a particular case otherwise properly before him. *Pogue v. Swink,* 284 S.W.2d 868, 873 (Mo. 1955). Rather, there was no such particular case before him.

---

[9] The Pick Up Order impinged upon the children's due process liberty interest in not being separated from their father, without prior notice to him in Louisiana and without exigent circumstances. *Morrell v. Mock,* 270 F.3d 1090, 1100 (7th Cir. 2001) (discussing limits of rendering a state's exercise of UCCJA jurisdiction over non-residents and the liberty interest in the parent-child relationship).

Second, courts have uniformly interpreted the UCCJEA not to authorize Pick Up Orders as to children, merely child custody orders as to their parents. *See, e.g., Schutter,* 632 S.W.3d at 833 (reviewing jurisdictional limits of UCCJEA orders); *Arkansas Department of Human Services v. Cox,* 349 Ark. 205, 216 (Ark. 2002) ("The order at issue is not a 'child-custody determination' that may be enforced pursuant to the UCCJEA. It is admitted to be a 'Take-into-Custody' order ... [it] is not enforceable under the UCCJEA or otherwise."). Nor was the Pick Up Order a warrant issued under RSMo. 452.885 ordering the seizure of an out-of-state child to protect him from imminent physical harm. *Cf. Katz v. Murphy,* 165 P.3d 649, 657 (Alaska 2007). Nor was the Pick Up Order the type of safety order contemplated by RSMo. 452.785.6.

Third, there was no issue or proceeding before Judge Eighmy related to the safety of the children. *Compare* RSMo 452.785.6 and RSMo. 452.885.1. This was not just a failure to provide notice and an opportunity to be heard. The issuance of the Order was not a mere "grave procedural error[]." *Stump,* 435 U.S. at 359. Rather, as the district court noted as to the Pick Up Order, "there were no judicial proceedings pending that would allow for this judicial sanction." Add. 4. Judge Eighmy's jurisdiction is limited to "hear[ing] and determin[ing] … cases." Mo. Const. Art. V § 17. With no such case before him, there is no jurisdiction.

Appellate Case: 21-3903    Page: 60    Date Filed: 04/11/2022 Entry ID: 5146117

Fourth, if there are no limits whatsoever to a judge's "dangerously broad" immunity, *Stump,* 435 U.S. at n.5, then the policy rationales undergirding *Bradley* and affirmed again in *Pierson*, 386 U.S. at 554, have no force or value. *See also Stump,* 435 U.S. at 370 (Powell, J., dissenting). The factors that support immunity for judicial acts are not implicated by Judge Eighmy's conduct in issuing the Pick Up Order. *Pierson,* 386 U.S. at 554. With no delinquency case pending before Judge Eighmy, then the policy behind judicial immunity—encouragement of "fearless decision making" free from the intimidation of vexatious litigation—has no bearing on Judge Eighmy's conduct. Immunity extends only to judicial decision making function as to the merits of a case. *Martin,* 127 F.3d at 722.

Conversely, the dangers implicit in his conduct—overreaching from the joinder of executive and judicial powers unique to Missouri's juvenile court system—have been apparent since the Federalist Papers. *See* The Federalist No. 47, at 303 (James Madison) ("Were the power of judging joined ... to the executive power, the judge might behave with all the violence of an oppressor." (quoting Montesquieu)).

48

**d. This is a "rare" case where the underlying judgment is void for due process violations, which is why the Missouri Supreme Court entered a writ of prohibition against Judge Eighmy**

Typically, collateral attacks on final judgments are impermissible under Missouri law, but this rule does not apply when the original judgment was void. Here, that would be the Judgment of Modification dated October 31, 2019, under which the Pick Up Order was issued. *See Blanchette,* 476 S.W.3d at 278, citing *La Presto v. La Presto,* 285 S.W.2d 568, 570 (Mo. 1955). Missouri was not the home state of either the father or the children. RSMo. 452.740.1(1); *Nestle v. Johns,* 452 S.W.3d 753, 757 (Mo. Ct. App. 2015).

A judgment is void if the issuing court "*did not have jurisdiction over the parties*, over the subject matter, *or in some rare instances where due process rights have been violated." Id.,* citing *In re Expungement of Arrest Records Related to Brown v. State,* 226 S.W.3d 147, 150 (Mo. banc 2007) (emphases added); *see also* 1 A. Freeman, Judgments (5th Ed. 1925) § 322, pp. 643–44. The Missouri Court of Appeals has voided judgments in juvenile cases for violations of due process rights. *S.L.C. v. M.M.,* No. WD84549 at *7 (Mo. Ct. App. W.D. Feb. 15, 2022).

The Missouri Supreme Court issued a writ of prohibition on the first full day of the children's confinement, stripping Judge Eighmy of jurisdiction and vacating his orders. App. 44; R. Doc. 1-4, at 1-2; App. 142-52; R. Doc. 20-1, at 1-11. A

Appellate Case: 21-3903     Page: 62     Date Filed: 04/11/2022 Entry ID: 5146117

writ of prohibition is an extraordinary remedy that should lie only in cases of extreme necessity. *State ex Rel. Ferrara v. Neill,* 165 S.W.3d 539, 541 (Mo. Ct. App. 2005). Prohibition will lie where there is a usurpation of judicial power because the trial court *lacks either personal or subject matter jurisdiction. State ex rel. S.M.H. v. Goldman,* 140 S.W.3d 280, 283 (Mo. Ct. App. E.D. 2004) (emphasis added). Admittedly, the Missouri Supreme Court did not enter the writ until November 19, 2020, a day after the initial second seizure of the children. But the entry of the writ suggests another jurisdictional defect. *Blanchette,* 476 S.W.3d at 278-79.

### e. The Union Parish civil commitment warrant does not break the chain of causation

In his Statement of the Case, Judge Eighmy references a separate civil commitment warrant issued by Union Parish. Eighmy brief at 9-10. He does not further argue the significance of that issue in his briefing, but he did so in the district court below. App. 56; R. Doc. 15 at 6; App. 175; R. Doc. 27, at 23. Although points not meaningfully argued in an opening brief are waived, *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 634 (8th Cir. 2007), nevertheless, in an excess of caution, Rockett will address that issue.

The suggestion that Union Parish's warrant for civil commitment caused the children's second seizure is an "intervening cause" argument as to the chain of

50

causation holds no water. Such an argument does not apply to a § 1983 claims where the underlying basis for the warrant application was constitutionally infirm. As the Union Parish "Ruling" indicates, the children's mother petitioned that court for a civil warrant for the return of the children solely on the basis of Judge Eighmy's Pick Up Order. App. 188; R. Doc. 1-5, at 1. Whatever process occurred in Union Parish does not immunize Judge Eighmy. *Compare Hartman v. Moore,* 547 U.S. 256 (2006) (plaintiff can introduce evidence to rebut presumption of intervening cause) with *Briggs v. Malley,* 748 F.2d 715 (1st Cir. 1984), *judgment aff'd and remanded,* 475 U.S 335 (1986) (examining "but for" causation in context of warrant application).

## <u>Conclusion</u>

Judge Eighmy lacks judicial immunity. He was not functioning as a judge in personally seizing and jailing the children. He later ordered them picked up in the absence of UCCJEA subject matter and personal jurisdiction, where there was no pending proceeding that would warrant that judicial sanction.

Plaintiff-Appellee D. Bart Rockett, as next friend of his minor children K.R. and B.R., prays this Court to AFFIRM the district court's order denying judicial immunity to Defendant-Appellant the Honorable Eric Eighmy; to AWARD him his reasonable attorney's fees and costs incurred in the appeal under 42 U.S.C. § 1988; and to GRANT such other relief as may be just, meet and reasonable.

Appellate Case: 21-3903    Page: 64    Date Filed: 04/11/2022 Entry ID: 5146117

Respectfully submitted,

Attorneys for Plaintiff-Appellee

/s/ Hugh A. Eastwood
Hugh A. Eastwood, 62058MO
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri 63105-3825
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax

/s/ W. Bevis Schock
W. Bevis Schock,  32551MO
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:          314-726-2322
Voice:        314-721-1698

## Certificate of Compliance

This document complies with the word limit of Fed. R. App. P. 28(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 11,788 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

/s/ Hugh A. Eastwood

## Certificate of Service

The undersigned certifies that (s)he e-filed this brief on April 11, 2022 with the Clerk of this Court using the Eighth Circuit's CM/ECF system, with e-service on all appellate counsel of record.

/s/ Hugh A. Eastwood

Appellate Case: 21-3903   Page: 66   Date Filed: 04/11/2022 Entry ID: 5146117