# United States Court of Appeals
## For the Eighth Circuit

D. BART ROCKETT, as next friend of his minor children, K.R. and B.R.,

*Plaintiff-Appellee,*

v.

THE HONORABLE ERIC EIGHMY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the Western District of Missouri, The Honorable M. Douglas Harpool

**REPLY BRIEF OF APPELLANT THE HONORABLE ERIC EIGHMY**

_____

Office of the Missouri Attorney General
Supreme Court Building
P.O. Box 899
Jefferson City, Missouri 65102
Phone: 314-340-4869
Fax: 573-751-0774
Michael.Talent@ago.mo.gov

**ERIC S. SCHMITT**
*Attorney General*

Michael E. Talent, CA 322220
*Deputy Solicitor General*

*Attorney for Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................i

TABLE OF AUTHORITIES.........................................................................ii

INTRODUCTION......................................................................................1

ARGUMENT ............................................................................................3

I.    Judge Eighmy's actions on October 8, 2019, were judicial acts. ......3

II.    Judge Eighmy did not act in the complete absence of jurisdiction
       in issuing the Pick Up Order. .......................................................12

CONCLUSION ......................................................................................21

CERTIFICATE OF COMPLIANCE...........................................................22

CERTIFICATE OF SERVICE..................................................................23

Appellate Case: 21-3903     Page: 2     Date Filed: 05/03/2022 Entry ID: 5153474

# TABLE OF AUTHORITIES

**Cases**                                                             **Pages(s)**

*Ammons v. Baldwin,*
705 F.2d 1445 (5th Cir. 1983) ............................................... 5

*Ashelman v. Pope,*
793 F.2d 1072 (9th Cir. 1986) (en banc) ............................. 18

*Ballinger v. Culotta,*
322 F.3d 546 (8th Cir. 2003) ................................................. 20

*Blanchette v. Blanchette,*
476 S.W.3d 273 (Mo. banc 2015) ......................................... 16

*Bradley v. Fisher,*
80 U.S. (13 Wall.) 335 (1871) .................................... 11, 12, 17

*Brictson v. Woodrough,*
164 F.2d 107 (8th Cir. 1947) ................................................. 17

*California v. Hodari D.,*
499 U.S. 621 (1991) ................................................................. 3

*de Rubia v. Rubio Herrera,*
541 S.W.3d 564 (Mo. Ct. App. 2017) ..................................... 8

*Duba v. McIntyre,*
501 F.2d 590 (8th Cir. 1974) (per curiam) ................... 15, 17

*Dykes v. Hosemann,*
776 F.2d 942 (11th Cir. 1985) (en banc) ..................... 12, 17

*Forrester v. White,*
484 U.S. 219 (1988) .............................................................. 10

*Gregory v. Thompson,*
500 F.2d 59 (9th Cir. 1974) .................................................... 5

*Hamilton v. City of Hayti,*
948 F.3d 921 (8th Cir. 2020) ................................................... 9

*Hamond v. Howell,*
86 Eng. Rep. 1035 (1677) ..................................................... 13

*Harris v. Deveaux,*
780 F.2d 911 (11th Cir. 1986) ................................................ 7

*Hightower v. Myers,*
304 S.W.3d 727 (Mo. banc 2010) ......................................... 16

*Holloway v. Brush,*
220 F.3d 767 (6th Cir. 2000) (en banc) ............................... 19

Appellate Case: 21-3903    Page: 3    Date Filed: 05/03/2022    Entry ID: 5153474

*Jackson v. Bachman*
　2021 WL 3109566 (S.D. Ohio July 22, 2021) ...................................... 6

*Justice Network Inc. v. Craighead County,*
　931 F.3d 753 (8th Cir. 2019) .......................................... 1, 12

*Ketteman v. Ketteman,*
　347 S.W.3d 647 (Mo. Ct. App. 2011) .................................. 8

*Liles v. Reagan,*
　804 F.2d 493 (8th Cir. 1986) ............................................. 5

*Lopez v. Vanderwater,*
　620 F.2d 1229 (7th Cir. 1980) ............................................ 7

*Lynch v. Johnson,*
　420 F.2d 818 (6th Cir. 1970) ....................................... 4, 5, 7

*Manning v. Ketcham,*
　58 F.2d 948 (6th Cir. 1932) ............................................. 16

*Martin v. Hendren,*
　127 F.3d 720 (8th Cir. 1997) ............................................ 3, 4

*McAlester v. Brown,*
　469 F.2d 1280 (5th Cir. 1972) ......................................... 7, 9

*McClain v. Brown,*
　587 F.2d 389 (8th Cir. 1978) (per curiam) .......................... 15

*Miller v. Seare,*
　96 Eng. Rep. 673 (1777) ................................................... 13

*Mireles v. Waco,*
　502 U.S. 9 (1991) .................................................... 7, 9, 20

*Moses v. Parwatikar,*
　813 F.2d 891 (8th Cir. 1987) ............................................ 18

*Newman v. Indiana,*
　129 F.3d 937 (7th Cir. 1997) ...................................... passim

*Patten v. Glaser,*
　771 F.2d 1178 (8th Cir. 1985) .......................................... 12

*Pierson v. Ray,*
　386 U.S. 547 (1967) ......................................................... 4

*Randall v. Brigham,*
　74 U.S. (7 Wall.) 523 (1868) ............................................ 15

*Missouri ex rel. S.M.H. v. Goldman,*
　140 S.W.3d 280 (Mo. Ct. App. 2004) ............................... 21

*Schottel v. Young,*
　687 F.3d 370 (8th Cir. 2012) ........................................... 12

Appellate Case: 21-3903　　Page: 4　　Date Filed: 05/03/2022 Entry ID: 5153474

*Stump v. Sparkman,*
    435 U.S. 349 (1978) ................................................................. passim
*Tate v. Arnold,*
    223 F.2d 782 (8th Cir. 1955) ............................................... 17
*The Case of the Marshalsea,*
    77 Eng. Rep. 1027 (1612) ................................................... 17
*Torres v. Madrid,*
    141 S. Ct. 989 (2021) ........................................................... 3
*United States v. Barry,*
    394 F.3d 1070 (8th Cir. 2005) ............................................. 3
*Wade v. Bethesda Hospital,*
    337 F. Supp. 671 (S.D. Ohio 1971) ................................... 15
*White v. Bloom,*
    621 F.2d 276 (8th Cir. 1980) ............................................. 12
*Woodworth v. Hulshof,*
    891 F.3d 1083 (8th Cir. 2018) ........................................ 7, 8
*Young v. Hayes,*
    218 F.3d 850 (8th Cir. 2000) ............................................. 15
*Zarcone v. Perry,*
    572 F.2d 52 (2d Cir. 1978) ................................................... 5

**Statutes**

MO. ANN. STAT. § 452.410 ............................................................ 9, 14
MO. ANN. STAT. § 452.740 ............................................................... 18
MO. ANN. STAT. § 452.745 ............................................................... 13

**Other Authorities**

J. Randolph Block, Stump v. Sparkman *and the History of Judicial Immunity*, 1980 DUKE L.J. 879 ....................................... 13, 16

iv

Appellate Case: 21-3903     Page: 5     Date Filed: 05/03/2022 Entry ID: 5153474

# INTRODUCTION

To start, both parties agree:

1. That Judge Eighmy loses immunity for ordering K.R.'s and B.R.'s detention on October 8, 2019, and for issuing the Pick Up Order only if (1) his actions were "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity," or (2) he acted "in the complete absence of all jurisdiction." *Justice Network Inc. v. Craighead County*, 931 F.3d 753, 760 (8th Cir. 2019) (quotations omitted).

2. That Judge Eighmy did not act in the complete absence of jurisdiction on October 8, 2019.

3. That the Pick Up Order was a judicial act.

4. That Judge Eighmy had subject-matter jurisdiction over the custody dispute.

That leaves two issues—whether Judge Eighmy's October 8, 2019, order detaining K.R. and B.R. was a judicial act and whether he issued the Pick Up Order in the complete absence of jurisdiction.

On the first, Judge Eighmy's actions were judicial acts. Mr. Rockett's argument rests on a rule that all Fourth Amendment seizures

1

are non-judicial acts. There is no such rule. Whether an act is judicial depends on the context of the judicial proceedings in which it occurred. Here, K.R. and B.R. refused to obey a custody arrangement that Judge Eighmy, their parents, and their guardian ad litem agreed was in their best interests. Judges routinely order people who flout their orders detained—for example, by holding them in contempt; they routinely order minors detained for their welfare; and they routinely take steps to ensure the efficacy of their orders. Mr. Rockett has no response to those facts besides pointing out that Judge Eighmy did not dress his order up in normal judicial accoutrements. That is insufficient to render it non-judicial.

As to jurisdiction, all that precedent, history, and logic require is a showing that the judge had subject matter jurisdiction. Mr. Rockett's contrary arguments ignore Missouri law and are unpersuasive. Indeed, the nub of his argument—that Judge Eighmy lacked authority under the UCCJEA to issue the Pick Up Order—is wrong. As a result, Judge Eighmy did not act in the complete absence of jurisdiction in issuing the Pick Up Order.

2

# ARGUMENT

## I. Judge Eighmy's actions on October 8, 2019, were judicial acts.

The crux of Mr. Rockett's argument that Judge Eighmy did not engage in a judicial act on October 8, 2019, is that he seized K.R. and B.R. by showing authority as a judge, not by physically grabbing them: "Judge Eighmy used his authority as a judge to force the children to follow him." Appellee's Br. 22. According to Mr. Rockett, that is not a judicial function, it is a police function[1]: "Functioning like a police officer, Judge Eighmy made a seizure by a show of authority and without the use of force." *Id.* (quotations, citations, and alterations omitted).

That is a broad claim. All the Fourth Amendment requires for there to be a seizure—in the absence of physical force—is "a show of authority" and subsequent submission, *California v. Hodari D.*, 499 U.S. 621, 626 (1991), plus an objective manifestation of an intent to restrain, *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021). *See also United States v. Barry*, 394 F.3d 1070, 1074–75 (8th Cir. 2005). So, according to Mr. Rockett, telling

---

[1] Mr. Rockett also says Judge Eighmy acted like a bailiff. *See* Appellee's Br. 23–25. That concedes Judge Eighmy's case, since bailiffs have quasi-judicial immunity. *See Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997).

Appellate Case: 21-3903    Page: 8    Date Filed: 05/03/2022 Entry ID: 5153474

an unruly witness to stay in his seat is not a judicial function but a seizure; ordering attorneys to approach the bench is also arguably a seizure and so a police act; and telling people they cannot leave during argument is a seizure and non-judicial.

The point is not that those acts those are seizures under the Fourth Amendment, but that the ramifications of Mr. Rockett's position are sweeping. Judicial immunity protects the adjudicative process, and threatening judges' immunity for routine directives necessary to ensure control of their courtrooms "would contribute not to principled and fearless decisionmaking but to intimidation." *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *cf. Martin v. Hendren*, 127 F.3d 720, 722 (8th Cir. 1997) ("Because judges frequently encounter disruptive individuals in their courtrooms, exposing bailiffs and other court security officers to potential liability for acting on a judge's courtroom orders could breed a dangerous, even fatal, hesitation.").

That is wrong, and so it makes sense that the cases Mr. Rockett cites to support his claim that "[a] personal seizure by a judge is functionally not an act of a judicial nature"[2] say no such thing. Appellee's

---

[2] Mr. Rockett cites more cases for the claim that "functionally non-

4

Br. 22.  As this Court has already said, the first—*Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974)—held that "assault [is] not a judicial act." *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986) (parenthetical summary).  *Ammons v. Baldwin*, 705 F.2d 1445 (5th Cir. 1983), likewise reads *Gregory* to strip judicial immunity for assault, not for seizures writ large.  *See id.* at 1448.  Furthermore, *Ammons* did not involve a seizure, just threats of physical violence.  *See id.*

The third case Mr. Rockett cites, *Newman v. Indiana*, 129 F.3d 937 (7th Cir. 1997), holds that a seizure accomplished through a show of authority *is a judicial act*.  In that case, a judge—after a custody hearing at midnight—told the parents "they could not leave his chambers" until after sheriffs removed the child from the parents' house.  *Id.* at 940.  The parents sued "for the temporary deprivation of their liberty when Judge

_____

normative conduct lacks judicial immunity."  Appellee's Br. 22.  He does not claim those cases are similar to this one.  The closest is *Lynch v. Johnson*, 420 F.2d 818 (6th Cir. 1970).  But that case supports Judge Eighmy, since it did not hold that a seizure is always a non-judicial act. Rather, it looked at the capacity in which the defendant judge was acting. *See id.* at 820.  That is, it implicitly rejects Mr. Rockett's rule.

Mr. Rockett also cites *Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978), *see* Appellee's Br. 23, but that case does not discuss judicial immunity, and so is irrelevant.

5

Deiter told them to remain in his chambers until [the child] was removed from their home." *Id.* at 941.

The court noted (albeit in dicta) that the judge was immune for the act. "Given the ever-present potential for violence in domestic-relations situations, Judge Deiter would have been acting well within the scope of a domestic-relations judge's judicial function had he enjoined the Newmans from returning home until Laura was removed." *Id.* at 941. "But as it was midnight when the hearing was held … compliance with the usual formalities attendant upon the issuance of an injunction would not have been practicable. So the judge just told them to stay put." *Id.* Regardless, the judge was immune. *See id.*

So the most that can be said is that criminal assault, or threats of assault, is not a judicial act, for not even all physical seizures are non-judicial acts. In *Jackson v. Bachman*, for example, the Southern District of Ohio concluded that physically bringing a person who had caused a "ruckus" back into the courtroom and holding her in contempt was a judicial act. 2021 WL 3109566, at *1 n.1 (S.D. Ohio July 22, 2021).

Since non-violently escorting children to detention and ordering officers to put them in jail, *see* App. 19–20; R. Doc. 1, at 13–14, is not

functionally similarly to criminal assault, Mr. Rockett's argument falls apart. Judge Eighmy, by contrast, correctly focuses on the context of his actions on October 8, 2019, to determine the relationship between the act at issue and general judicial functions. *See Mireles v. Waco*, 502 U.S. 9, 13 (1991) (per curiam); *Newman*, 129 F.3d at 941; *see also Lynch v. Johnson*, 420 F.2d 818, 820 (6th Cir. 1970) ("A judge does not cease to be a judge when he undertakes to chair a PTA meeting, but, of course, he does not bring judicial immunity to that forum, either."). That is, the context provides "why [Judge Eighmy] did" what he did, *see* Br. Appellant 18, not in terms of subjective motivation, *contra* Appellee's Br. 20–22, but in terms of determining the relationship between what he did and a judicial function, *see* Br. Appellant 18. That tracks the Fifth Circuit's four-factor test, which Mr. Rockett cites, *see* Appellee's Br. 31–32. *See McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972). And it tracks this Court's discussion of the doctrine—which has, for example, noted that ordering the arrest and detention of a person may sometimes be a judicial act and may sometimes not. *See Woodworth v. Hulshof*, 891 F.3d 1083, 1092–93 (8th Cir. 2018) (discussing *Harris v. Deveaux*, 780 F.2d

Appellate Case: 21-3903   Page: 12   Date Filed: 05/03/2022 Entry ID: 5153474

911 (11th Cir. 1986) and *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980)).

But Mr. Rockett's refusal to grapple with what actually happened makes sense for the facts completely undermines his case. Judge Eighmy's actions stem from a custody modification hearing involving K.R. and B.R.[3] Mr. Rockett is thus wrong that "there was nothing before Judge Eighmy," "no petition or motion ... when he approached the children in the courthouse lobby after hours." *Id.* at 32; *see also id.* at 26. The custody modification meant the children were at the courthouse for a judicial proceeding—indeed, that they were "within the *in rem* jurisdiction of the circuit court." *Ketteman v. Ketteman*, 347 S.W.3d 647, 653 (Mo. Ct. App. 2011).

That means Judge Eighmy did not do what he did "as a result of events in his private, nonjudicial life, events in which he had a personal stake," but as a result of a case before him. *Woodworth*, 891 F.3d at 1092 (quotations omitted). K.R. and B.R. thus "dealt with [him] in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). That the

---

[3] The cases Mr. Rockett cites involving marital dissolution, *see* Appellee's Br. 26 (citing *de Rubia v. Rubio Herrera*, 541 S.W.3d 564 (Mo. Ct. App. 2017), are thus off-point.

8

interaction occurred outside court hours and the courtroom (though in the courthouse) doesn't change that fact. *See, e.g., Newman*, 129 F.3d at 941; *McAlester*, 469 F.2d at 1282; *cf. Hamilton v. City of Hayti*, 948 F.3d 921, 926 (8th Cir. 2020) (holding that issuing a warrant is a judicial act without discussing when or where the warrant was issued).

And K.R. and B.R. interacted with Judge Eighmy to tell him, repeatedly, that they would not comply with the custody settlement that all parties agreed was—and that by law had to be, *see* MO. ANN. STAT. § 452.410.1—in K.R.'s and B.R.'s best interest. *See* App. 17; R. Doc. 1, at 11. Judge Eighmy then walked them to the detention center and "ordered … uniformed officers to lock" K.R. and B.R. up. App. 20; R. Doc. 1, at 14.

So the question is whether it is "a general function normally performed by a judge" to order the detention of children when they refuse to comply with a custody order issued for their welfare. *Mireles*, 502 U.S. at 13. It is. Judges—both in Missouri and more generally—normally do what Judge Eighmy did here in exercising their contempt power, *see* Br. Appellant 18–20; in exercising their power to take juveniles into custody or to issue orders ensuring the safety of a child during custody

9

proceedings, *see id.* 20–21; and in making orders to ensure the efficacy of their judgments, *see id.* at 21–22.

Far from contesting that, Mr. Rockett implicitly concedes the point by arguing that Judge Eighmy failed to respect certain procedural protections or exceeded his legal authority. *See* Appellee's Br. 25–31. Whether he did or not, the Supreme Court has rejected that argument. "[T]he informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." *Forrester v. White*, 484 U.S. 219, 227 (1988); *see also Stump v. Sparkman*, 435 U.S. 349, 362–63 & n.12 (1978) (rejecting "respondents' argument that the informality with which [the judge] proceeded rendered his action nonjudicial and deprived him of his absolute immunity"); *Newman*, 129 F.3d at 941 ("It is irrelevant that the judge may have erred . . . . Immunity washes out errors.").

At core, Judge Eighmy faced a unique situation—minors refusing to comply with a settlement agreement he approved and instead insisting on something (not going with Ms. Ballard, but with Mr. Rockett) that he, their parents, and their guardian ad litem agreed was not in their best interest. Mr. Rockett does not provide "a more sensible course that

10

[Judge Eighmy] might have followed." *Newman*, 129 F.3d at 942. Nor does any come to mind. Having the children stay in the courthouse overnight for a hearing the next day was not a viable option, and letting K.R. and B.R. go with Mr. Rockett would undo the settlement agreement. In short, all Mr. Rockett says is that Judge Eighmy acted unusually and irregularly, without noting that it was an unusual and irregular situation.

Such situations are why judicial immunity exists. "Courts and judges often act *ex parte*." *Stump*, 435 U.S. at 363 n.12. And a judge will likely have to act in unusual circumstances on unique facts at some point. *See id.* at 362 n.11 ("Even if it is assumed that in a lifetime of judging, a judge has acted on only one petition of a particular kind, this would not indicate that his function in entertaining and acting on it is not the kind of function that a judge normally performs."). But such unusual situations that require quick action—as is the case here—present the strongest arguments for immunity, for it is in those situations where judges should be most free "to act upon [their] own convictions, without apprehension of personal consequences . . . ." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871).

Appellate Case: 21-3903    Page: 16    Date Filed: 05/03/2022 Entry ID: 5153474

## II. Judge Eighmy did not act in the complete absence of jurisdiction in issuing the Pick Up Order.

Mr. Rockett's arguments that Judge Eighmy acted in the complete absence of jurisdiction in issuing the Pick Up Order fail because he concedes, as he must, that Judge Eighmy had subject-matter jurisdiction over the custody modification under Missouri law. *See* Appellee's Br. 34–35. That is what matters, as the Supreme Court has said, *see*, *e.g.*, *Stump*, 435 U.S. at 356–57 & n.7; *Bradley*, 80 U.S. at 351, and the circuit courts have understood the Supreme Court accordingly: "Courts applying *Stump v. Sparkman* have interpreted the Court as requiring a showing of an absence of subject matter jurisdiction to defeat a judge's assertion of immunity." *Dykes v. Hosemann*, 776 F.2d 942, 948 (11th Cir. 1985) (en banc). It is also how this Court analyzes the question. *See*, *e.g.*, *Justice Network Inc. v. Craighead County*, 931 F.3d 753, 762 (8th Cir. 2019); *Schottel v. Young*, 687 F.3d 370, 374 (8th Cir. 2012); *Patten v. Glaser*, 771 F.2d 1178, 1179 (8th Cir. 1985) (per curiam); *White v. Bloom*, 621 F.2d 276, 279 (8th Cir. 1980). And it is correct as a matter of history. At common law, a judge of a court of general jurisdiction—like Judge Eighmy—had immunity for all judicial acts without further inquiry: "In all the cases where protection is given to the Judge giving an erroneous

Appellate Case: 21-3903    Page: 17    Date Filed: 05/03/2022 Entry ID: 5153474

judgment, he must be acting as Judge.  The protection, in regard to the Superior Courts, is absolute and universal." *Miller v. Seare*, 96 Eng. Rep. 673, 675 (1777); *see Hamond v. Howell*, 86 Eng. Rep. 1035, 1036 (1677) ("[N]o action will lie against a Judge of Record for what he doth *quatenus* a Judge.").[4]

Thus, the undisputed fact that Judge Eighmy had subject-matter jurisdiction over Mr. Rockett's and Ms. Ballard's custody dispute establishes that he did not act in the complete absence of jurisdiction at any point.  Mr. Rockett provides four counter-arguments, but the two on which he most relies assume Judge Eighmy lacked authority under the UCCJEA.  *See* Appellee's Br. 33–44.  Not so.  The Taney County circuit court issued the original custody order for K.R. and B.R.  *See* App. 74–75; R. Doc. 15-1, at 2–3.  Thus, the Taney County circuit court—and, by extension, Judge Eighmy—had "exclusive continuing jurisdiction" over the custody determination, including for purposes of modifying it.  M O.

---

[4] The historical analysis by amicus, the Institute for Justice, is unpersuasive.  A better analysis of the history of judicial immunity is in J. Randolph Block, Stump v. Sparkman *and the History of Judicial Immunity*, 1980 Duke Law Journal 879–920.  To the extent any of the amici look at something besides subject matter jurisdiction, they ask the Court to ignore Supreme Court and circuit precedent.

13

ANN. STAT. §§ 452.410.1, 745.1; *see also* Appellant Br. 33.[5]  Mr. Rockett's

arguments thus fail on their own terms.  They are also meritless.

*First*, Mr. Rockett says that Judge Eighmy needed statutory

authority under the UCCJEA.  *See* Appellee's Br. 35.  In support, Mr.

Rockett points to the Supreme Court's refusal in *Stump* to infer that a

judge acted in complete absence of jurisdiction in granting a petition for

sterilization because Indiana's laws "provided for the sterilization of

institutionalized persons under certain circumstances, but otherwise

contained no express authority for judicial approval of tubal ligations."

*Stump*, 435 U.S. at 358 (citations omitted).  The problem is that the

Court's analysis was still about the state court's subject-matter

jurisdiction: "We agree with the District Court, it appearing that neither

by statute nor by case law *has the broad jurisdiction* granted to the circuit

courts of Indiana *been circumscribed* to foreclose consideration of a

petition for authorization of a minor's sterilization."  *Id.* (emphases

added).  That is, the question the Court answered was not whether the

---

[5] Judge Eighmy had jurisdiction even analyzing the modification request as an original proceeding.  *See* Br. Appellant 33.  Mr. Rockett does challenge that analysis.  *See* Appellee's Br. 39–40.

Appellate Case: 21-3903     Page: 19     Date Filed: 05/03/2022 Entry ID: 5153474

state judge had subject matter jurisdiction *and* statutory authority; it was whether the judge had subject matter jurisdiction under state law.

Then there is *Duba v. McIntyre*, 501 F.2d 590 (8th Cir. 1974) (per curiam). *See* Appellee's Br. 36. There, this Court, quoting *Wade v. Bethesda Hospital*, 337 F. Supp. 671 (S.D. Ohio 1971), said the concept of jurisdiction involves "the power of the Court to render the particular decision which was given." 501 F.2d at 592. To the extent that language is inconsistent with *Stump*, it is no longer viable. *See Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000). But there is no inconsistency. The defendant in *Duba* was a justice of the peace, not a judge of general jurisdiction. *See Duba*, 501 F.2d at 591. That is a distinction with a difference: "In reference to judges of limited and inferior authority," like justices of the peace, "it has been held that they are protected only when they act within their jurisdiction." *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 535–36 (1868). By contrast, "no such limitation exists with respects to judges of superior or general authority," like Judge Eighmy. *Id.* at 536; *see also McClain v. Brown*, 587 F.2d 389, 390 (8th Cir. 1978) (per curiam). The limited authority of an inferior court means statutes defining the scope of those courts' authority play a role in the immunity analysis that

15

does not exist where, as here, the judge presides over a court of general jurisdiction. *See* J. Randolph Block, Stump v. Sparkman *and the History of Judicial Immunity*, 1980 DUKE L.J. 879, 896 ("[A] jurisdictional limit on the immunity of superior court judges would have had little practical effect, because courts of general jurisdiction were … not subject to similar statutory jurisdictional requirements" as inferior courts).

The upshot: Mr. Rockett cannot escape the fact that the UCCJEA did not affect Judge Eighmy's subject matter jurisdiction over the custody dispute. *See Blanchette v. Blanchette*, 476 S.W.3d 273, 279 (Mo. banc 2015). Indeed, one of the cases he cites, *Hightower v. Myers*, 304 S.W.3d 727 (Mo. banc 2010), refutes Mr. Rockett's claim. There, the Missouri Supreme Court concluded that challenges to a court's authority under the "jurisdictional" provisions of the UCCJEA's predecessor statute were waived since they did not affect a circuit court's subject matter jurisdiction. *Id.* at 733. The holding establishes that judicial actions taken in the absence of UCCJEA authority are not *coram non judice* under Missouri law, and so the judge that takes such actions does not act outside "his judicial function" and so loses immunity. *See Manning v.*

16

*Ketcham*, 58 F.2d 948, 949 (6th Cir. 1932); *see also Bradley*, 80 U.S. at 352–53; *The Case of the Marshalsea*, 77 Eng. Rep. 1027, 1038 (1612).

*Second*, Mr. Rockett argues that Judge Eighmy needed personal jurisdiction over K.R. and B.R. to receive immunity. *See* Appellee's Br. 41–44. Again, this argument turns on whether Judge Eighmy had authority under the UCCJEA. *See id.* at 41–42. Since he did, this claim is a non-starter.

In any event, Mr. Rockett concedes that there is no binding authority from this court requiring a judge to have personal jurisdiction before immunity attaches. And he does little to counter the fact that such a requirement would be "contrary to Supreme Court precedent." Appellant Br. 29 (quotations and alterations omitted) (quoting *Dykes*, 776 F.2d at 948). As both parties note, there are cases from this Court saying, in dicta, that personal jurisdiction may be necessary.[6] But those cases pre-date *Stump*—a case that "requir[es] a showing of an absence of subject matter jurisdiction," not personal jurisdiction, "to defeat a judge's assertion of immunity." *See Dykes*, 776 F.2d at 947–48 (analyzing *Stump*

---

[6] *Duba*, and *Brictson v. Woodrough*, 164 F.2d 107 (8th Cir. 1947). Further research disclosed one more: *Tate v. Arnold*, 223 F.2d 782 (8th Cir. 1955).

17

and other circuit court cases). Thus, post-*Stump*, the circuit split Mr. Rockett says exists, *see* Appellee's Br. 42, has narrowed because courts have *rejected* Mr. Rockett's position. The Ninth Circuit, for example, overruled precedent requiring personal jurisdiction for judicial immunity, concluding that so long as "judicial actions [are] taken within the court's subject matter jurisdiction, immunity applies." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc). This Court has favorably cited *Ashelman* for its holding that "pleading a conspiracy does not affect absolute immunity." *Moses v. Parwatikar*, 813 F.2d 891, 892–93 (8th Cir. 1987). There is no reason to reject its holding as to personal jurisdiction.

Mr. Rockett tries to avoid those issues by narrowing his rule to just the UCCJEA on the theory that the "jurisdictional" provisions of the UCCJEA do not require factual findings. *See* Appellee's Br. 44. Given that the statutory factors do turn on the existence of facts—for example, whether a state is a child's home state or the connections between a child, a child's parents, and the state, *see* MO. ANN. STAT. § 452.740.1—Mr. Rockett's argument is unpersuasive.

Appellate Case: 21-3903    Page: 23    Date Filed: 05/03/2022 Entry ID: 5153474

As noted above, Judge Eighmy had personal jurisdiction here because the requirements of the UCCJEA were met. However, even if he did not, that does not matter, for he had subject matter jurisdiction, and "[w]hen … a court with subject matter jurisdiction acts where personal jurisdiction is lacking, judicial and prosecutorial absolute immunity remain intact." *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc).

*Third*, Mr. Rockett says that Judge Eighmy acted in excess of his jurisdiction because "there was no motion or petition pending in the case or issues before Judge Eighmy that warranted a Pick Up Order for the children." Appellee's Br. 45. The logic seems to be that Judge Eighmy could issue pick up orders only in delinquency cases, and since there was no such case before him, he acted in the clear absence of jurisdiction. *See id.* at 45–48.

The logic fails because the premise is false: Ms. Ballard filed a motion for contempt alleging Mr. Rockett was withholding custody of K.R. and B.R. App. 25; R. Doc. 1, at 19. Since Judge Eighmy had jurisdiction over the custody order, he acted on the request and ordered Mr. Rockett and K.R. and B.R. to appear. App. 26; R. Doc. 1, at 20. Only

19

after they failed to do so did Judge Eighmy issue the Pick Up Order. App. 26–27; R. Doc. 1, at 20–21. The order—regardless of whether it was expressly authorized by state law—was therefore issued "in the very aid of the judge's jurisdiction over a matter before him," and so "cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

*Fourth*, Mr. Rockett argues that the modification was void for due process violations and that has jurisdictional significance. *See* Appellee's Br. 49–50. The complete legal answer is that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359. The additional legal answer is that due process violations do not affect the subject matter jurisdiction of Missouri courts, as evidenced by the "or" in the quotation Mr. Rockett provides. *See* Appellee's Br. 49. And it is gilding the lily to note that Mr. Rockett's argument is an improper attack on a state court judgment. *See Ballinger v. Culotta*, 322 F.3d 546, 548–49 (8th Cir. 2003).[7]

---

[7] Mr. Rockett says the fact the Missouri Supreme Court issued a writ of prohibition "suggests another jurisdictional defect." Appellee's Br. 50. He does not say what that defect was, however, and it is not necessarily

## CONCLUSION

For those reasons, as well as those set forth in his principal brief, Judge Eighmy respectfully asks the Court to reverse the District Court's denial of his motion to dismiss on the basis of judicial immunity and remand with instructions to dismiss the case.

Dated: May 2, 2022                    Respectfully submitted,

                                      **ERIC S. SCHMITT**
                                      *Attorney General*

                                      /s/ *Michael E. Talent*
                                      Michael E. Talent, CA 322220
                                       Deputy Solicitor General

                                      *Attorney for Defendant-Appellant*

---

jurisdictional—as Mr. Rockett's own case notes. Besides jurisdictional issues, a writ of prohibition can issue for an "abuse of discretion such that the trial court lacks the power to act as contemplated," or "where there is no adequate remedy by appeal." *Missouri ex rel. S.M.H. v. Goldman*, 140 S.W.3d 280, 283 (Mo. Ct. App. 2004).

Appellate Case: 21-3903     Page: 26     Date Filed: 05/03/2022 Entry ID: 5153474

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the typeface and formatting requirements of Fed. R. App. P. 27 and 32, that it is written in Century Schoolbook 14-point font, and that it contains 4,394 words as determined by the word-count feature of Microsoft Word. Both the brief and addendum have been scanned for viruses and are virus-free.

*/s/ Michael E. Talent*

Appellate Case: 21-3903    Page: 27    Date Filed: 05/03/2022 Entry ID: 5153474

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system, and I will serve a copy of the foregoing on all participants in the case who are not registered CM/ECF users by mailing a copy of the same, first-class, postage paid, to the address listed on the Court's CM/ECF system.

*/s/ Michael E. Talent*

Appellate Case: 21-3903    Page: 28    Date Filed: 05/03/2022 Entry ID: 5153474